## Case No. 8,352.

### The LILLIE MILLS.

[1 Spr. 307;[1] 18 Law Rep. 494.]

District Court, D. Massachusetts. Nov., 1855.

MARITIME LIEN—SUPPLIES — FURNISHED IN HOME PORT—REASONABLE OPPORTUNITY TO ENFORCE.

1. By the general maritime law, there is no lien upon a vessel for supplies in her home port.

2. The lien which attaches to a vessel for supplies furnished while in a foreign port, continues as against bona fide purchasers and attaching creditors, without notice, only until the furnisher has had a reasonable opportunity to enforce it.

[Cited in The D. M. French, Case No. 3,938; The Dubuque. Id. 4,110; The Artisan, Id. 567; The Bristol, 11 Fed. 163; Re Wright, 16 Fed. 483; Nesbit v. The Amboy, 36 Fed. 926; The Lyndhurst, 48 Fed. 840.]

3. The lien does not necessarily continue until the vessel has returned to the place at which the supplies were furnished.

This was a suit in rem, for supplies furnished for the brig Lillie Mills, in March, June, and October, 1853. The libel was filed October 12th, 1855. It appeared in evidence, that the brig was built at St. Mary's, Florida, in 1853, was registered there, and that port continued to be her home port, until October, 1854, when she was registered in Portland, Maine. A large portion of the claim was for articles furnished while the vessel was building at St. Mary's, or before she left her home port, for the first time. And as to all this portion of the claim, the respondent contend-

ed that it never constituted a lien upon the vessel. It further appeared, that in October, 1853, the vessel was in the port of New York, the residence of the libellant, who then furnished her with a portion of the supplies now sued for. Since these supplies were furnished, the vessel had been three times at St. Mary's, remaining two or three weeks each time; three times in the port of Boston,—once for a period of two months, and once for a period of twenty days; and three times in Portland. The libellant had notice of her being in Boston, at the several times she was there. The respondent, George Baker, had purchased seven-sixteenth parts, and the respondents, Yeaton & Hale, five-sixteenth parts of said brig. These purchases took place about a year after the supplies were furnished. The respondent, Joseph D. Coburn, a sheriff, held the remainder of the said brig, under attachments upon mesne process issuing out of the state courts of Massachusetts, in favor of creditors. Upon these facts, the respondents contended, that if any lien ever existed for the supplies furnished in New York, it had been lost as against bona fide purchasers and attaching creditors.

C. W. Loring, for libellant.
John C. Dodge, for respondents.

SPRAGUE, District Judge. There is no lien, by the general maritime law, for the supplies furnished to this vessel in her home port. It is not contended that there is any by the statute law of Florida. For the supplies furnished in New York, the libellant, undoubtedly, once had a lien upon the vessel. The question is: Has it been waived or lost by lapse of time, or otherwise? If there had been no transfer or attachment of the property, I should hold the lien was not lost. When the rights of third persons have intervened, the lien will be regarded as lost, if the person in whose favor it existed has had a reasonable opportunity to enforce it, and has not done so. This is the well-settled rule of the admiralty. The lien for supplies has its origin in the necessities and convenience of commerce and navigation [and it will not be extended further than is required by the necessities in which it originates. It exists only for supplies in a foreign port. In the home port the law presumes the supplies may be had upon the credit of the owner. So when the vessel has had time to return to her home port, these necessities are answered.][2] It is for the interest of navigation and commerce that these liens should exist, and it is equally so that they should not be allowed to extend unnecessarily, to the injury of innocent third persons. In this case there can be no doubt the libellant has had ample opportunity to enforce his lien, and it cannot now be allowed to prevail against the rights of bona fide purchasers, or attaching creditors. Whether, if there had

---

[1] [Reported by F. E. Parker. Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

[2] [From 18 Law Rep. 494.]

been no attachment of the four-sixteenths, the lien would have continued and been enforced against that part, notwithstanding the conveyance of the twelve-sixteenths, is a question which I have no occasion to consider.

It is urged by the libellant, that the lien must be regarded as continuing, until the vessel has returned to the port where the supplies were furnished. This is not so. She might never return there, and thus the lien would continue indefinitely. [As to all that portion of this vessel which has been conveyed, the lien is lost. As to that portion which has not been conveyed, the rights of attaching creditors are to be protected. It may be they will not maintain their actions. This can only be ascertained by the judgments of the courts in which the suits are pending. If the libellant elects to retain possession of the five-sixteenths to await the result of these suits, he can do so.] [2] Libel dismissed.

NOTE. See The Chusan [Cases Nos. 2,716, 2,717]; The Eliza Jane [Case No. 4,363]; The Antarctic [Id. 479]; The Utility [Id. 16,806]; The Romp [Id. 12,030]; The Canton [Id. 2,388]; Stillman v. The Buckeye State [Id. 13,445]; 1 Pars. Mar. Law, 433, note 2; 2 Pars. Mar. Law, 664, note 2.

---

LILLIE MILLS. The (ROBINSON v.). See Case No. 11,958.

LIMANTOUR (UNITED STATES v.). See Case No. 15,601.

LIMINGTON (BARRELL v.). See Case No. 1,040.

LINCK (FOOTE v.). See Case No. 4,913.