O. Y. TONNAGE, A. B., et al. v. TEXAS CO.

(Circuit Court of Appeals, Fifth Circuit. February 7, 1924.)

No. 4106.

**1. Shipping ⬅️132(1)—Libel held not based on stale claim.**

Where a cargo was damaged during a voyage from December, 1915, to April, 1916, and from June, 1916, until March, 1917, owner of the cargo made repeated attempts by correspondence with agents of vessel to settle the claim, and in June, 1917, the vessel was sold, and after that date own-

er had difficulty in locating it, *held*, that a libel filed in June, 1917, was not based on a stale claim.

**2. Shipping ☞132(4)—Owner has burden of proving seaworthiness of ship and that cargo was damaged by perils of sea.**

Burden is on owner to prove seaworthiness of a vessel, and that the damage to the cargo was occasioned by perils of the sea, for which owner is not responsible.

**3. Shipping ☞132(4)—Owner held not to sustain burden of proving ship was seaworthy.**

Owner *held* not to sustain the burden of proving that a ship whose cargo was damaged by sea water was seaworthy.

Appeal from the District Court of the United States for the Southern District of Mississippi; William B. Sheppard, Judge.

Libel by the Texas Company against the sailing vessel Sylfid, in which O. Y. Tonnage, A. B., a corporation, and others, claimed the vessel. Decree for libelant, and claimants appeal. Affirmed.

Geo. H. Terriberry, Fraser L. Rice, W. W. Young, Jos. M. Rault, and Walter Carroll, all of New Orleans, La., for appellants.

John D. Grace and M. A. Grace, both of New Orleans, La. (Edwin H. Grace, of New Orleans, La., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

BRYAN, Circuit Judge. This is an appeal in admiralty, by the claimant of the sailing vessel Sylfid, from a decree in favor of the owner of the cargo. The cargo consisted of oil. During the voyage, sea water came into contact with and corroded some of the tin containers of the oil, and thus caused a leakage.

The appellant pleaded: (1) That the claim was stale; and (2) that the vessel was seaworthy. On the merits, the answer avers that the damage was occasioned by a heavy gale at sea, which caused the waves to sweep the deck of the vessel and to loosen the tarpaulins of the main and after hatches, with the result that sea water got into the cargo through the hatches.

On December 6, 1915, the Sylfid sailed from Port Arthur, Tex., and in March and April, 1916, discharged her cargo at Cape Town and Port Elizabeth, South Africa. The libel was not filed until June 6, 1918. In November and December, 1916, the Sylfid was at Sabine, Tex., and from July until September 12, 1917, was at New Orleans. This vessel was owned by one Kordelin and his partners from 1907 until January 9, 1917, when Kordelin purchased the shares of the other owners, and transferred the title to the appellant, O. Y. Tonnage, A. B., a corporation, of which he became one of the managers. When the libel was filed, the title was in this corporation.

From June, 1916, until March, 1917, appellee was corresponding with the agents of the owners seeking to secure a settlement of its claim. On September 29, 1916, agents of the appellant offered a charter, but on condition that the appellee would waive its claim. After it became apparent that an amicable adjustment of the claim could not be made, the appellee repeatedly inquired of the Sylfid's agents as to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the whereabouts of the vessel. These inquiries were persistent and continuous, but were unsuccessful until finally the appellee learned that the Sylfid had arrived at Gulfport, Miss., and then the libel was promptly filed. Throughout this whole period Albert Henriksson was master of the vessel.

The Sylfid was a wooden sailing vessel built in 1884, and had a wooden deck which was mounted on iron plates. The master testified that, before the vessel was loaded, one of Lloyds' surveyors required the middle, the port side, and the bow of the deck to be caulked, and that before she sailed the surveyor issued a certificate of seaworthiness and of proper stowage of cargo; that before the voyage was begun all the hatches were put 'on and covered with tarpaulins, which were securely fastened. The master, first mate, and the boatswain testified that on the evening of the day of sailing the vessel encountered a gale of such violence as that the crew were unable to take in sail; that the vessel was thrown on her beam, and the waves lifted and loosened the tarpaulins on the main and after hatches. An entry in the log book is as follows:

"About 8 o'clock the wind began to increase. Made fast all the sail we possibly could. At 10 o'clock called out all the hands to stand by. The ship started to keel over to starboard side, so that the rail was under the water, and taking heavy seas all over, so that the starboard side of No. 2 hatch got loose and the water poured into the hold. With great difficulty and risk of life we secured the hatch fast again. At the same time the after hatches gave way."

Without further incident the vessel arrived at the ports of destination. The usual hatch and cargo surveys were made, but there was no survey of the vessel for seaworthiness. When the hatches were opened it was found that the cargo reached up to the ceiling and to the hatch covers. The part of the cargo that was damaged was on the starboard side, where traces of salt water were discovered on the iron plates under the wooden deck. There was evidence for the appellee that some of the planking appeared to have been recently laid, and old planking recaulked on the starboard side and in close proximity to the damaged cargo. The sawdust covering on top of the cases of oil, immediately under the hatch covers, was undisturbed, and there was no trace of salt water anywhere within the square of the hatches.

[1] 1. We are of opinion that, under the facts of this case, appellee's failure to file its libel earlier does not constitute laches. During 1916 negotiations looking to a settlement were being actively carried on, and appellee's claim had not been rejected. The correspondence shows that, after the idea of settlement without suit was abandoned, the appellee was for a long time unsuccessful in its efforts to locate the vessel for the purpose of bringing suit. While the fact of change of ownership is, of course, to be considered, it is not sufficient to justify a holding that libelee's claim is stale. It is fairly inferable from the record that Kordelin and his former associates knew of the claim. At least they are chargeable with the master's knowledge of the damage. Furthermore, Kordelin appears to have taken title to himself for the purpose of transferring it to the corporation, of which he became one of the managers, and which was the owner at the time the libel was filed. His knowledge is therefore to be imputed to the appellant.

[2, 3] 2. It is conceded that the decree correctly measures the amount of the damage to the cargo. The burden is on the owner to prove the seaworthiness of the vessel, and also that the damage to the cargo was occasioned by perils of the sea for which the owner is not responsible. Mere proof of damage by sea water is not sufficient. The Wildcroft, 201 U. S. 378, 26 Sup. Ct. 467, 50 L. Ed. 794; The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748. The testimony of the members of the crew, to the effect that the tarpaulins were loosened to such an extent as to permit salt water to seep in through the hatch covers, is at variance with the entry in the log book to the effect that the hatches themselves became loose. This entry in the log book is contradicted by the physical appearance of the sawdust covering and by the fact that from top to bottom of the cargo no damage was done within the squares of the hatches. The theory advanced to sustain the testimony for the appellant is that the water seeped through the hatch covers and ran down the ceiling of the ship while it was turned over on its beam, thus avoiding the cargo under the hatches and only coming into contact with it on the starboard side. The evidence upon which the appellee bases a contention that the gale was not as severe as the witnesses for the appellant claim it was has not been stated, because under all the evidence the sea water entered the hold of the vessel and damaged the cargo. We are of opinion that the appellant has not sustained the burden cast upon it, in view of the physical facts, and of the evidence for the appellee that the damage to the cargo was under that part of the deck which appeared to have been recently repaired, and not on the port side, where the caulking was done before the voyage was begun. It is not probable, as it appears to us, that the salt water seeped in through the hatches, since no trace of it was found in the sawdust, or on the top layer of the tin containers immediately under the hatch covers.

The decree is affirmed.