### THE FALCON.

### THE POWHATTAN.

District Court, D. Maryland. June 6, 1927.

No. 1263.

1. **Limitation of actions ⟨⟩11(1)—United States ⟨⟩133—United States, suing as sovereign to enforce public right or assert public interest, is not bound by limitations, nor barred by laches.**

United States is not bound by any statute of limitations, nor barred by laches of its officers, however gross, in a suit brought by it as a sovereign government to enforce a public right or to assert a public interest.

2. **Limitation of actions ⟨⟩11(1)—United States ⟨⟩133—Immunity of United States from limitations or laches is barred, where remedy sought is enforcement of right for benefit of private party.**

Immunity of the United States from defense of limitations or laches is barred, when it is merely a formal party to suit, and remedy sought in its name is enforcement of right for benefit of private party.

3. **Admiralty ⟨⟩26—Effect of law authorizing proceedings against United States in case of vessels employed as merchant vessel was to substitute right of action in personam (Suits in Admiralty Act, §§ 1–3 [Comp. St. §§ 1251¼–1251¼b]).**

Effect of Suits in Admiralty Act, §§ 1–3 (Comp. St. §§ 1251¼–1251¼b), relative to proceedings in admiralty against vessels owned by the United States in case of vessels employed as merchant vessels, was merely to substitute a right of action in personam against United States for action in rem against vessel, so as to obviate inconvenience to government from seizure of its ships.

4. **United States ⟨⟩133—Laches of United States in suing for damages to steamship, resulting in rights of innocent purchaser intervening, prevented recovery (Shipping Act Sept. 7, 1916 [Comp. St. § 8146a et seq.]; Merchant Marine Act 1920, § 1 [Comp. St. § 8146¼]; Const. art. 1, § 8, cl. 1).**

Assuming that suit by United States as owner of steamship for damages occasioned by grounding of ship, United States is proceeding in its public character by virtue of Shipping Act Sept. 7, 1916 (Comp. St. § 8146a et seq.), Merchant Marine Act 1920, § 1 (Comp. St. § 8146¼), and Const. art. 1, § 8, cl. 1, nevertheless laches in failing to bring suit for nearly four years, during which time rights of innocent purchaser intervened, *held* to prevent recovery.

**5. United States ⬤➞71—Transferring contract to United States does not change nature and legal effect.**

Nature and legal effect of contract are not changed by its transfer to the United States.

**6. Admiralty ⬤➞34—Defense of laches is available on shorter lapse of time, if lien on vessel is claimed to detriment of purchaser without notice.**

If a lien on vessel is claimed to detriment of purchaser for value, without notice of lien, defense of laches is available on shorter lapse of time and more rigid scrutiny of circumstances of the delay than if the claimant had been owner when lien accrued.

**7. Maritime liens ⬤➞50—Lien on vessel will not be enforced against purchaser without notice, if there was earlier opportunity to enforce it.**

A lien on vessel will not be enforced against bona fide purchaser without notice, if earlier reasonable opportunity to enforce lien was neglected.

**8. Admiralty ⬤➞61—Result of rights of other parties intervening after holder of lien on vessel had opportunity to enforce it is loss of lien itself.**

When rights of other parties intervene after a period during which the holder of lien has had ample opportunity to enforce it, result is not merely loss of remedy by lapse of time, but loss of right or lien itself which ceases to exist.

**9. Estoppel ⬤➞62(1)—Public may estop itself by acts done in its proprietary capacity.**

Though estoppels against public are perhaps not as readily granted as against private individuals, public may estop itself by acts done in its proprietary capacity.

**10. United States ⬤➞124—Claims and rights of sovereignty submitting itself to jurisdiction of court of equity are adjudicable by rules applicable to private parties.**

When a sovereignty submits itself to jurisdiction of a court of equity, and prays its aid, its claims and rights are adjudicable by every other principle and rule of equity applicable to claims and rights of private parties under similar circumstances.

**11. United States ⬤➞133—Rule preventing claims of government being barred by laches should not be used as instrument of positive injustice to destroy rights of innocent purchasers.**

Rule that government should not be barred concerning claims in interest of public by a mere lapse of time should not be used as an instrument of positive injustice in hands of United States to destroy rights of innocent purchasers.

In Admiralty. Libel by the United States against the steam tugs Falcon and Powhattan. On exceptions to answer. Exceptions overruled.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., for the United States.

Marbury, Gosnell & Williams, of Baltimore, Md., for claimant of the Powhattan.

SOPER, District Judge. The United States, as owner of the steamship Massillion Bridge, has brought a libel in rem against the steam tugs Powhattan and Falcon, claiming substantial damages occasioned by the grounding of the ship in the Baltimore harbor on June 8, 1920, alleged to have been caused by the negligent operation of the tugs while in control of the ship. The libel was filed in this court on April 28, 1924. The Cottman Company, as owner and claimant of the Powhattan, has filed an answer, denying responsibility on the part of the Powhattan for the accident, and further answering that at the time of the accident the tugs were owned by the Maryland Transportation Company, from which, on March 30, 1922, the Cottman Company purchased the Powhattan; that the Maryland Transportation Company was shortly thereafter liquidated and dissolved; that at the time of the purchase the claimant did not assume the liabilities of the Maryland Transportation Company, and had no knowledge of any claim on the part of the United States against the tug, and did not acquire such knowledge until October 1, 1923. The Cottman Company therefore claims that it has been greatly prejudiced by the long delay of the United States in bringing suit, and that its claim is stale and barred by laches. The United States excepts to so much of the answer as alleges that its claim is barred by laches, contending that laches may not be availed of as a defense against the government.

[1, 2] The principle that the United States is not bound by any statute of limitations, nor barred by laches of its officers, however gross, in a suit brought by it as a sovereign government to enforce a public right or to assert a public interest, is established beyond all doubt. It is only when the United States is merely a formal party to a suit, and the remedy sought in its name is the enforcement of a right for the benefit of a private party, that the immunity of the United States from the defense of limitations or laches is barred. United States v. Beebe, 127 U. S. 338, 8 S. Ct. 1083, 32 L. Ed. 121. The United States asserts that, although in the case at bar it is seeking compensation for damages to its merchant vessel operated in the carrying trade, it is nevertheless suing in its sovereign capacity to enforce a public right. It calls attention to the Shipping Act of September 7, 1916 (39 Stat. 728 [Comp. St. § 8146a et

seq.]), declared by its title to be an act to establish a United States Shipping Board, for the purpose of encouraging, developing, and creating a naval auxiliary and naval reserve, and a merchant marine to meet the requirements of the commerce of the United States, etc. (The Lake Monroe, 250 U. S. 246, 250, 39 S. Ct. 460, 63 L. Ed. 962; Eastern Transportation Co. v. United States, 272 U. S. 675, 688, 47 S. Ct. 289, 71 L. Ed. ——), and to section 1 of the Merchant Marine Act of June 5, 1920 (41 Stat. 988 [Comp. St. § 8146¼]) wherein it is said that it is necessary for the national defense, and for the proper growth of its foreign and domestic commerce, that the United States shall have a merchant marine of the best-equipped and most suitable type of vessels, sufficient to carry the greater portion of its commerce, and serve as a naval or military auxiliary in the time of war or national emergency. There is indeed authority for the proposition that when for the purpose of advancing the trade of its people, or providing revenue for its treasury, a government acquires, mans, and operates ships in a carrying trade, they are public ships in the same sense that war ships are, and that the maintenance and advancement of the economic welfare of a people in time of peace is no less a public purpose than the maintenance and training of a naval force. Berizzi Bros. v. The Pesaro, 271 U. S. 562, 574, 46 S. Ct. 611, 70 L. Ed. 1088; U. S. v. Porto Rico Fruit Union (C. C. A.) 12 F.(2d) 961. Speaking generally, the Supreme Court has also said that the United States does not and cannot hold property as a monarch may for private or personal purposes, but all of its property is held and applied "to pay the debts and provide for the common defense and general welfare of the United States." Const. art. 1, § 8, cl. 1; Van Brocklin v. Tennessee, 117 U. S. 151, 158, 6 S. Ct. 670, 29 L. Ed. 845. Compare South Carolina v. United States, 199 U. S. 437, 26 S. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737; Los Angeles v. Los Angeles Gas Corp., 251 U. S. 32, 40 S. Ct. 76, 64 L. Ed. 121.

It is contended, however, by the claimant that the laws enacted by Congress for the operation of the nation's merchant marine indicate an intention that the United States, having entered upon the marine carrying trade in competition with private citizens, shall stand therein on the same footing with them. The acts of Congress especially referred to are section 9 of the Shipping Act, supra (Comp. St. § 8146e), and sections 1, 2, and 3 of the Suits in Admiralty Act of March 9, 1920 (41 Stat. 525 [Comp. St. §§ 1251¼, 1251¼a, 1251¼b]). They provide particularly for the revocation of the rule that the United States may not be sued, and its property may not be seized, at the instance of a private citizen. Recognizing that claims against government ships would necessarily arise in the transaction of the shipping business, Congress provided by said section 9 that such vessels, while employed under charter solely as merchant vessels, should be subject to all laws, regulations, and liabilities governing merchant vessels, whether the United States were interested therein as owner, in whole or in part, or held any other interest therein. It was held in The Lake Monroe, supra, that under this section, as modified by subsequent legislation, the federal courts had jurisdiction to arrest a government-owned vessel when libeled for damages arising from collision.

[3] Sections 1 and 2 of the Suits in Admiralty Act provide that no vessel owned by the United States shall be subject to arrest or seizure by judicial process in the United States; but in cases where, if such vessel were privately owned, a proceeding in admiralty could be maintained against her, a libel in personam may be brought against the United States, provided the vessel is employed as a merchant vessel. Section 3 provides that such suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties. The effect of this act is merely to substitute a right of action in personam against the United States for the action in rem against the vessel, so as to obviate the inconvenience to the government from the seizure of its ships. Blamberg Bros. v. U. S., 260 U. S. 45a, 43 S. Ct. 179, 67 L. Ed. 346; U. S. v. Neptune Line (C. C. A.) 12 F.(2d) 568; Eastern Transportation Co. v. United States, supra.

It is noteworthy that, while it is provided that government vessels shall be subject to all laws, regulations, and liabilities governing merchant vessels, and suits may be brought against the United States for the liabilities of its ships, and tried according to the law and practice in like cases between private parties, no express provision is made for suits by the United States or the procedure by which its rights may be enforced. Now it is well settled that the extraordinary immunity granted to the United States from the defense of limitations and laches shall not be lost, except by act of Congress clearly manifesting such purpose; and this prin-

ciple has been accepted as requiring, not a liberal, but a strict, construction of a statute when it is urged as a bar to the rights of the government. U. S. v. Whited & Wheless, 246 U. S. 552, 561, 38 S. Ct. 367, 62 L. Ed. 879; Dupont v. Davis, 264 U. S. 456, 462, 44 S. Ct. 364, 68 L. Ed. 788.

[4] It may be assumed, therefore, for the purposes of this suit, that the United States is proceeding in its public character, and the defense of laches is no more available here than in any other government suit. Whether such a defense would be available to a libelant against a cross-libel of the United States, in view of the provisions of section 3 of the Suits in Admiralty Act, need not be decided. It does not, however, necessarily follow that the exceptions to the answer should be sustained. The proposition for which the United States contends has been broadly stated in a score of cases[1] cited by counsel, from U. S. v. Kirkpatrick, 9 Wheat. 720, 735, 6 L. Ed. 199, to Utah Power & Light Co. v. United States, 243 U. S. 389, 409, 37 S. Ct. 387, 61 L. Ed. 791, but in none of them does the actual decision cover facts equivalent to those in this suit.

In the Kirkpatrick Case it was said:

"The general principle is that laches is not imputable to the government; and this maxim is founded not in the motion of extraordinary prerogative, but upon a great public policy. The government can conduct its business only through its agents, and its fiscal operations are so various, and its agencies so numerous and scattered, that the ut-

most vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions."

In the last case it was said that, as a general rule, laches or neglect of duty on the part of the officers of the government is no defense to a suit by it to enforce a public right or protect a public interest, seemingly suggesting that the rule is not universally applicable. It was decided a number of times in the cases cited that the surety on the bond of a public officer will not be relieved merely because of the failure on the part of officers of the government to carry out statutory provisions requiring report or accounts from the defaulting officer, and also that the defense of laches cannot be made against the United States in a suit by it to recover its property from persons who have unlawfully possessed themselves thereof. But in none of these cases were there involved the rights of an innocent purchaser of property without notice of the government's claim or interest, and without knowledge of circumstances to put him upon inquiry. When the rights of such a person do intervene, it is obvious that a grave injustice will be done by permitting the United States to proceed with its claim irrespective of its negligent and harmful delay. Nothing short of binding precedent would justify such a ruling.

The distinction noted has been influential in the decisions of the District Courts in similar cases where the defense of laches has been made, namely, The No. 34 (D. C.) 11 F. (2d) 287; Id. (D. C.) 13 F.(2d) 927; The New Windsor (D. C.) 13 F.(2d) 925; The Messenger (D. C.) 14 F.(2d) 147. A comparison of The No. 34 with The Messenger, brings out the point. In the last-mentioned case the laches with which the United States was charged consisted merely of lapse of time. It was declared in sweeping language that the defense of laches would not lie; but the rights of no third person had intervened. On the other hand, in the No. 34 a period of approximately four years had elapsed between the accident to the government ship and the filing of the suit, and in the interval, two years after the accident, the vessel had been purchased by the claimant without notice of the lien. The court held that, under these circumstances, the United States, being engaged in a business enterprise, was subject to the same conditions as a private citizen, and could be met in its suit by the defense of laches. It is suggested that in each case the decision was correct.

[5] It is quite consistent with the general principle that the public interests shall not

---

[1] U. S. v. Kirkpatrick, 9 Wheat. 720, 735, 6 L. Ed. 199; United States v. Vanzandt, 11 Wheat. 184, 6 L. Ed. 448; United States v. Nicholl, 12 Wheat. 505, 6 L. Ed. 709; Dox v. Postmaster General, 1 Pet. 318, 7 L. Ed. 160; Lindsey v. Miller, 6 Pet. 666, 8 L. Ed. 538; United States v. Knight, 14 Pet. (39 U. S.) 301, 315, 10 L. Ed. 465; Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534; Gaussen v. United States, 97 U. S. 584, 24 L. Ed. 1009; Steele v. United States, 113 U. S. 128, 134, 5 S. Ct. 396, 28 L. Ed. 952; United States v. Nashville, Chattanooga & St. Louis R. Co., 118 U. S. 120, 6 S. Ct. 1006, 30 L. Ed. 81; United States v. Beebe, 127 U. S. 338, 344, 8 S. Ct. 1083, 32 L. Ed. 121; United States v. Insley, 130 U. S. 263, 9 S. Ct. 485, 32 L. Ed. 968; United States v. Dallas Military Road Co., 140 U. S. 599, 632, 11 S. Ct. 988, 35 L. Ed. 560; United States v. Des Moines, 142 U. S. 510, 12 S. Ct. 308, 35 L. Ed. 1099; Curtner v. United States, 149 U. S. 662, 13 S. Ct. 985, 1041, 37 L. Ed. 890; United States v. Verdier, 164 U. S. 213, 218, 17 S. Ct. 42, 41 L. Ed. 407; United States v. Michigan, 190 U. S. 379, 405, 23 S. Ct. 742, 47 L. Ed. 1103; Utah Power & Light Co. v. United States, 243 U. S. 389, 409, 37 S. Ct. 387, 61 L. Ed. 791.

be prejudiced by the laches or negligence of public officers, that the United States, in its business relations with private citizens, be subject to the general rules of law. The nature and legal effect of a contract are not changed by its transfer to the United States. For instance, when the United States, through its lawfully authorized agents, becomes the owner of negotiable paper, it is obliged to give the same notice to charge an endorser as would be required of a private holder. It takes the paper subject to all the equities existing against the person from whom it purchased at the time when it acquired title, and cannot, therefore, maintain an action upon it, if at that time all right of action of that person was extinguished, or was barred by the statute of limitations. U. S. v. Nashville Ry. Co., 118 U. S. 120, 125, 6 S. Ct. 1006, 30 L. Ed. 81; U. S. v. Bank of Metropolis, 15 Pet. 377, 10 L. Ed. 774.

[6, 7] Similarly it may be said that the nature and legal effect of a maritime lien are not changed when acquired by the United States, but the lien is held, as in the case of a private person, subject to all of the rules of admiralty law. There can be no question that the facts of the case at bar would make out a perfect defense against the libelant, if the libelant were a private party. If a lien on a vessel is claimed to the detriment of a purchaser for value, without notice of the lien, the defense of laches is available upon a shorter lapse of time and a more rigid scrutiny of the circumstances of the delay than if the claimant had been the owner when the lien accrued. Therefore the lien will not be enforced against bona fide purchasers without notice, if earlier reasonable opportunity to enforce the lien was neglected. The libel in this case could have been filed at any time during the period of two years prior to the purchase by the claimant, and in the absence of any explanation of the delay, it follows that the libel was too late, unless the fact that the government is the libelant alters the case. The Key City, 81 U. S. (14 Wall.) 653, 20 L. Ed. 896, The Nebraska (C. C. A.) 69 F. 1009; O. Y. Tonnage v. Texas (C. C. A.) 296 F. 893. The reasons for the rule are perhaps most clearly expressed in the statement by Judge Sprague in the Lillie Mills, Fed. Cas. No. 8,352, 1 Spr. 307, cited with approval by Judge Addison Brown in the Bristol (D. C.) 11 F. 156, 163:

"If there had been no transfer or attachment of the property, I should hold the lien was not lost. When the rights of third persons have intervened, the lien will be regarded as lost, if the person in whose favor it existed has had a reasonable opportunity to enforce it, and has not done so. This is the well-settled rule of the admiralty. The lien for supplies has its origin in the necessities and convenience of commerce and navigation. * * * It is for the interest of navigation and commerce that these liens should exist, and it is equally so that they should not be allowed to extend unnecessarily, to the injury of innocent third persons. In this case there can be no doubt the libelant has had ample opportunity to enforce his lien, and it cannot now be allowed to prevail against the rights of bona fide purchasers, or attaching creditors."

[8] It is not merely the loss of a remedy by lapse of time, but the loss of the right or lien itself which ceases to exist when the rights of other parties intervene after a period during which the holder of the lien has had ample opportunity to enforce it. There is no real distinction in principle between the duty of the United States to act with reasonable promptness, if it would keep alive its right against an offending vessel, and its duty as the holder of negotiable paper to preserve its right of action against an endorser by giving him timely notice. In the one case, as in the other, the United States, having entered the field of private rights, must be bound by the established rules. For a like reason it was said by the Supreme Court in Standard Oil Co. v. United States, 267 U. S. 76, 79, 45 S. Ct. 211, 69 L. Ed. 519, where interest was claimed on insurance money under a policy issued by the United States that, "when the United States went into the insurance business, issued policies in familiar form, and provided that in case of disagreement, it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business."

Likewise the Supreme Court has held in Chesapeake & Delaware Canal Co. v. U. S., 250 U. S. 123, 126, 39 S. Ct. 407, 63 L. Ed. 889, that when the government asserts its right as a stockholder with respect to the conduct of a corporation's affairs, its rights, duties and privileges are no greater than those of any other stockholder. These cases reaffirm the rule thus laid down in Cooke v. U. S., 91 U. S. 389, 398 (23 L. Ed. 237): "Laches is not imputable to the government, in its character as sovereign, by those subject to its dominion. * * * Still a government may suffer loss through the negligence of its officers. If it comes down from its position of sovereignty, and enters the domain of com-

merce, it submits itself to the same laws that govern individuals there. Thus, if it becomes the holder of a bill of exchange, it must use the same diligence to charge the drawers and endorsers that is required of individuals; and, if it fails in this, its claim upon the parties is lost. * * * Generally, in respect to all the commercial business of the government, if an officer specially charged with the performance of any duty, and authorized to represent the government in that behalf, neglects that duty, and loss ensues, the government must bear the consequences of his neglect." See, also, The French Republic v. Saratoga Vichy Spring Co., 191 U. S. 427, 437, 24 S. Ct. 145, 48 L. Ed. 247.

[9, 10] There is, indeed, an element of estoppel against the United States involved in the facts of the case at bar, by reason of its failure to act for a period of two years after the injury was suffered, and its seeming acquiescence in the sale of the tug. Estoppels against the public are perhaps not as readily granted as against private individuals, but it has been decided frequently that the public may estop itself by acts done in its proprietary capacity. While mere delay, either by limitations or laches, does not of itself constitute a bar to suits of the United States, yet when a sovereignty submits itself to the jurisdiction of a court of equity, and prays its aid, its claims and rights are adjudicable by every other principle and rule of equity applicable to the claims and rights of private parties under similar circumstances. Thus it was held that it is a good defense to an action by the government to set aside a patent for land on the ground of fraud that the title has passed to a bona fide purchaser for value, without notice. Equity will not simply consider the question whether the title has been fraudulently obtained, but also will protect the rights and interests of innocent parties. U. S. v. Stinson (C. C. A.) 125 F. 907; Id., 197 U. S. 200, 25 S. Ct. 426, 49 L. Ed. 724. See, also, Walker v. U. S. (C. C.) 139 F. 409; Id. (C. C. A.) 148 F. 1022; Iowa v. Carr (C. C. A.) 191 F. 257, 266.

[11] There is sound reason why the government, because of its multitudinous affairs, should be protected against the negligence of its numerous officers, and should not be barred from asserting claims in the interest of the public by the mere lapse of time. Thus the immunity of the government against the defense of laches is preserved. But, on the other hand, this rule of law should not be used as an instrument of positive injustice in the hands of the United States to destroy the rights of innocent purchasers. Particu-

larly is this true in the realm of admiralty where secret liens abound. The provisions of the acts of Congress in dealing with its merchant marine, whereby the government is subjected to the same rules as private citizens, are based upon a just foundation. The precedents do not require that a different spirit shall pervade the decision of the courts in applying the rule of laches to suits by the United States when the rights of third parties are involved.

The exceptions to the answer will be overruled.