**UNITED STATES of America,
Libelant,**

v.

**THE DIESEL TANKER A. C. DODGE,
INC., Respondent.
No. 20531.**

United States District Court
E. D. New York.
Feb. 13, 1957.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., for libellant, Walter L. Hopkins, Trial Atty., New York City, Admiralty and Shipping Section.

Foley & Martin, New York City, for respondent, Diesel Tanker A. C. Dodge, Inc., James E. Kent, New York City, of counsel.

RAYFIEL, District Judge.

The respondent has filed exceptions to the libel herein, and moves to dismiss it.

The facts, briefly, are as follows: The United States of America, the libelant, was the charterer of the Steam Tanker Amtank, under a charter dated May 25, 1945 between its owners, National Bulk Carriers, Inc. and the United States of America, through the Administrator, War Shipping Administration. On June 17, 1945, while the vessel was being operated under the charter, it was allegedly struck by the Motor Tanker A. C. Dodge, owned and operated by the respondent.

The charter provided inter alia that the charterer was to indemnify and save harmless the owner of the vessel from any loss occasioned by the detention thereof because of any accident caused or contributed to by another vessel, person or corporation and that upon payment of such indemnity to the owner of the vessel the charterer was to become subrogated to the extent thereof, and to all rights of the owner to recover for such detention from such vessel, person or corporation, together with the right to bring suit therefor in its own name or that of the owner. The libel alleges that pursuant to the provisions of the charter the libelant paid to the Amtank's owner the sum of $22,699.87 for the detention caused by the accident referred to therein.

The libel also alleges that at the time of the collision the Amtank was insured for hull damage with the American Hull Insurance Syndicate, which paid to the owner the sum of $34,381, covering the cost of the repairs necessitated by reason of the collision, and that the libelant

became entitled to recover the cost of such repairs from the respondent.

On May 25, 1952, the respondent's vessel, the tanker A. C. Dodge, caught fire, exploded, and was totally destroyed. The explosion resulted in the death of all but one of her crew of fourteen, including her Captain, Chief Engineer and 1st Assistant Engineer, who had been in charge of her at the time of the collision with the Amtank on June 17, 1945.

The libel herein was filed on October 8, 1956, more than eleven years after the happening of the last-mentioned accident.

The respondent contends that the libelant, having by the terms of the charter been subrogated to the rights of the owner, stands in the shoes of the owner, and could acquire no greater rights than it had; that hence the claim herein is subject to the defense of laches, so flagrant that the libel is defective on its face, thus imposing upon the libelant the burden of explaining and justifying the delay of eleven years in the filing thereof; that so far as the repairs made necessary by the hull damage are concerned the libelant, not having paid therefor, has no right to the recovery thereof.

After the motion was argued libelant's counsel informed me somewhat unconventionally, that he had served respondent's counsel with a notice that he would move at the trial of the action for leave to amend the libel. Despite the impropriety of libelant's procedure I shall assume, in the consideration of respondent's motion, that the libelant filed or applied for and obtained leave to file an amended libel containing the amendments proposed in libelant's notice.

The proposed amended libel contains only one change of any consequence, namely, the new article designated as No. (7), wherein it is alleged that pursuant to the charter the Amtank was insured for marine hull risks by and with the *United States, through the War* *Shipping Administrator,* who then secured a policy of reinsurance from the American Marine Hull Insurance Syndicate, and that the *United States,* rather than the *American Marine Hull Insurance Syndicate,* paid to the Amtank's owner the sum of $34,381 to cover the cost of the repairs to the hull, made necessary by the accident. However, it may be assumed that, pursuant to the policy of reinsurance, the United States' was reimbursed by the American Marine Hull Insurance Syndicate for said loss.

█ It is well established that, absent congressional enactment clearly to the contrary, a suit brought by the United States in its sovereign capacity to enforce a public right or establish a public interest is not bound by any statute of limitations or subject to the defense of laches of its officers, however gross. United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194; Chesapeake & Delaware Canal Co. v. U. S., 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889.

█ The respondent agrees with this principle, but argues that the activity here involved, namely, the operation of the vessel in question under charter, was *not* the exercise of a sovereign right or power. It argues, therefore, that the Government was subrogated for the vessel's owner and could have no greater rights than it had.

I disagree with respondent's contention that the operation of the Amtank by the Government was not the exercise of a sovereign right. At the time of the charter the United States was at war. In the prosecution thereof it had requisitioned all merchant ships either by charter or purchase. See Executive Order No. 9054, February 7, 1942, U.S. Code Cong.Service 1942, p. 154, as amended by Executive Order No. 9244, September 16, 1942, U.S.Code Cong. Service 1942, p. 1254, 3C F.R.Cumm. Supp. Secs. 1086, 1209. The War Shipping Administrator, in the exercise of his duties under those executive orders, and. I assume, for public use and purpose, had entered into this charter.

An analogous situation arose during World War I, when the Government took over the operation of the railroads. In that connection the Supreme Court, in the case of DuPont de Nemours Co. v. Davis, 264 U.S. 456, at page 462, 44 S.Ct. 364, at page 366, 68 L.Ed. 788, said:

"In taking over and operating the railroad systems of the country, the United States did so in its sovereign capacity, as a war measure, 'under a right in the nature of eminent domain,' North Carolina R. Co. v. Lee, 260 U.S. 16, 43 S.Ct. 2, 67 L.Ed. 104; Missouri Pacific R. Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087; Northern Pacific Ry. Co. v. [State of] North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897; In re Tidewater Coal Exchange, 2 Cir., 280 F. 648, 649; and it may not be held to have waived any sovereign right or privilege unless plainly so provided. Moneys and other property derived from the operation of the carriers during federal control, as we have seen, are the property of the United States. Section 12, 40 Stat. 457. An action by the Director General to recover upon a liability arising out of such control is an action on behalf of the United States in its governmental capacity. Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 126, 39 S.Ct. 407; In re Tidewater Coal Exchange, supra; and, therefore, is subject to no time limitation, in the absence of congressional enactment clearly imposing it. United States v. Nashville, C. & St. L. Ry. Co., 118 U.S. 120, 125, 6 S.Ct. 1006, 30 L.Ed. 81; United States v. Whited & Wheless [Ltd.], 246 U.S. 552, 561, 38 S.Ct. 367, 62 L.Ed. 879. Statutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government. United States v. Whited & Wheless [Ltd.], supra."

The Government is not barred by the mere passage of time and need not set out in its libel any reasons for its delay.

United States v. Baltimore Towing Co., D.C., 144 F.Supp. 854.

The exceptions to the libel, as it is deemed for the purpose of this motion to have been amended, are therefore overruled. Of course, it will be the province of the trial judge to determine whether the delay in the filing of the libel was such that the respondent was irreparably prejudiced thereby, as was the case in The Falcon, D.C., 19 F.2d 1009, in which the vessel in suit had been sold to an innocent purchaser who had no notice of the Government's claim, or in the United States v. Alex Dussel Iron Works, 5 Cir., 31 F.2d 535, at page 537, wherein the Government sued on behalf of the owners of cargo, in which the court said, "*So far as the United States as libelant sues to recover damages for the account of the owners of the cargo, who were private persons, it has no immunity from laches. If the cargo owners had sued in their own behalf, the defense of laches would, if established, prevail against them. There can be no reason that, when the United States sues in their behalf, the rule should be different.*" The Supreme Court, in the case of Curtner v. United States, 149 U.S. 662, 13 S.Ct. 985, 37 L.Ed. 890, said:

" 'When the Government is a mere formal complainant in a suit, not for the purpose of asserting any public right or protecting any public interest, title, or property, but merely to form a conduit through which one private person can conduct litigation against another private person, a court of equity will not' subject the private person to any exemptions designed 'for the protection of the rights of the United States alone.'

"*If the United States had no rights of its own to enforce as to the cargo, but sought to enforce only the rights of the private persons, who are the cargo owners, it is to that extent not immune from the defense of laches.*" (Emphasis added.)

Settle order on notice.