UNITED STATES of America,
Plaintiff,

v.

FIDELITY–BALTIMORE NATIONAL
BANK & TRUST COMPANY, a National Banking Association, Successor in interest to The Baltimore National Bank of Baltimore, Maryland, a National Banking Association, Defendant.

Civ. No. 9328.

United States District Court
D. Maryland.

May 25, 1959.

See also 166 F.Supp. 1.

Leon H. A. Pierson, U. S. Atty., Baltimore, Md., for plaintiff.

Bartlett, Poe & Claggett and Gordon C. Murray, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

The question now before the court is whether the government's action is barred by either limitations or laches. A separate trial has been had on those issues, which were raised by the answer.

During the years 1946, 1947 and 1948, the Maryland Department of Employment Security, a state agency acting for the federal government under Title V of the Servicemen's Readjustment Act of 1944, as amended, 38 U.S.C.A. § 696 et seq., drew checks on an account which the agency maintained with defendant bank and in which it deposited funds supplied by the United States.

For the purposes of this hearing defendant admits that it accepted and charged to the account of the agency about 2,700 checks, on which the purported endorsements of the payees had been forged. Almost all of the checks

were for $20; a few were for other small amounts. Nineteen hundred checks had been cashed at various branches of the Provident Savings Bank; the remainder were cashed at taverns, restaurants, hotels and other banks. After the agency learned that there had been a number of forgeries, it promptly notified defendant drawee bank. The first claim and demand was made on the 14th day of January, 1948, and involved 824 checks. The second, for 1,758 checks, was made on May 15, 1948. The third, for 131 checks, was made on July 1, 1949. About 60% of the checks were accompanied by forgery affidavits made by the named payees. The remaining 40% were accompanied by an affidavit made by the chairman of the agency that to the best of his knowledge, information and belief the purported endorsements of the payees were forgeries.

Defendant promptly notified the cashing banks, taverns and other endorsers, and a meeting of counsel for the endorsers was held in March, 1948. Some of the endorsers paid a total of $4,062 without further ado; this money was paid over to the agency, reducing the claim to $48,618 on 2,437 checks.

The cashing and collecting banks, as well as defendant drawee bank, carried bankers' blanket bonds. Following conferences between counsel for the insurance companies and others, it was decided to offer 60% in full settlement of the claims. Robert D. Bartlett, Esq., attorney for the United States Fidelity & Guaranty Company, insurer of defendant bank, was requested to carry on the negotiations for settlement on behalf of all the banks, insurance companies and individuals involved, with the understanding that if the offer was accepted each would contribute his agreed share. In March 1949 Mr. Bartlett made this offer to the chairman of the agency, who recommended its acceptance by the federal government. In April 1949 the Veterans' Administration expressed a desire to examine the checks, and in February 1950 they were returned to the agency. Mr. Bartlett kept in touch with the representatives of the agency, and in November 1951 was told that it had refused to institute suit in connection with the checks and had renewed its recommendation that the offer of settlement be accepted. Nothing further was heard from the federal government until defendant bank received a letter from Herbert F. Murray, Assistant United States Attorney, dated February 16, 1955, demanding $48,618 and interest. Since the claim was first made, a few of the cashing tavern owners and others have died or become insolvent, but all of the cashing and collecting banks are still in operation.

Before the statute of limitations had run against claims by defendant bank against the endorsers, a gentlemen's agreement was entered into by the attorneys representing the endorsers to extend the period of limitations for one year in the hope that some action might be taken by the federal government. At the expiration of that year, the banks and individuals involved refused to grant any further extension of limitations. Nevertheless defendant bank did not file any suits within the period of limitations to collect from any of the endorsers.

As noted above, the bankers' blanket bond to defendant drawee bank was issued by the U.S.F. & G. That company, however, had reinsured 75% of its risk with nine reinsurers. The U.S.F. & G. had also issued a bankers' blanket bond to the Provident Savings Bank, but had reinsured only 50% of that risk. The reinsurers of the Provident bond were the two principal reinsurers of the bond issued to defendant. Since Provident had cashed about 1,900 out of the 2,437 checks involved, it is apparent that the U.S.F. & G., whose attorney was handling the matter for defendant bank, would have lost money if defendant had secured a judgment against Provident.

On December 14, 1956, the United States, as the real party in interest and as assignee of the state agency, filed this action, demanding $48,618, with interest from the date on which the checks were improperly paid and charged. On February 18, 1957, defendant filed a third-party complaint against Provident and

three other banks, alleging that each of the checks had been cashed by, deposited in, or otherwise negotiated by one of the third-party defendants, which had thereupon endorsed such check and guaranteed the genuineness of the payee's endorsement thereon; that defendant had relied upon the guarantees of the several third party defendants, and had given prompt notice to each of them when it learned of the alleged forgeries. Defendant sought judgment against the several third-party defendants for their respective shares of any judgment the government might recover against defendant. The third-party defendants moved for summary judgment in their favor under the Maryland three-year statute of limitations. Ann.Code of Maryland, Art. 57, sec. 1. That motion was granted for the reasons set out in the opinion of this court reported at 166 F.Supp. 1. Defendant now contends that the government's claim against it is barred by limitations or laches.

The principle that the United States is not bound by any statute of limitations, nor barred by the laches of its officers, however gross, in a suit brought by it as a sovereign government to enforce a public right or to assert a public interest, is established beyond all doubt. The Falcon, D.C.D.Md., 19 F.2d 1009, 1010, Soper, J., "The general principle is that laches is not imputable to the government; and this maxim is founded not in the notion of extraordinary prerogative, but upon a great public policy. The government can conduct its business only through its agents, and its fiscal operations are so various, and its agencies so numerous and scattered that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions." United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L.Ed. 199. See also United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283. There are a few exceptions to that rule, but this case does not fall within any of them. (1) When the United States is merely a formal party to a suit, and the remedy sought in its name is the enforcement of a right for the benefit of a private party, there is no immunity from the defense of limitations or laches. United States v. Beebe, 127 U.S. 338, 8 S.Ct. 1083, 32 L.Ed. 121. (2) "While mere delay, either by limitations or laches, does not of itself constitute a bar to suits of the United States, yet when a sovereignty submits itself to the jurisdiction of a court of equity, and prays its aid, its claims and rights are adjudicable by every other principle and rule of equity applicable to the claims and rights of private parties under similar circumstances. Thus it was held that it is a good defense to an action by the government to set aside a patent for land on the ground of fraud that the title has passed to a bona fide purchaser for value, without notice. Equity will not simply consider the question whether the title has been fraudulently obtained, but will also protect the rights and interests of innocent parties. United States v. Stinson, [7 Cir.] 125 F. 907; Id., 197 U.S. 200, 25 S.Ct. 426, 49 L.Ed. 724. See, also, Walker v. United States, C.C., 139 F. 409; Id., [5 Cir.] 148 F. 1022; State of Iowa v. Carr, [8 Cir.] 191 F. 257, 266." The Falcon, 19 F.2d at page 1014. (3) In The Falcon, the United States had entered into the marine carrying trade, pursuant to acts of Congress, and one of its vessels had been damaged in a collision with another ship. The United States delayed filing its suit against the other ship for a period of four years, during which the other ship was sold to an innocent purchaser without knowledge or notice of the government's claim and without knowledge of circumstances to put him upon inquiry. The government's claim was held to be barred.

In that case Judge Soper noted, 19 F. 2d at pages 1012, 1013: "It is quite consistent with the general principle that the public interests shall not be prejudiced by the laches or negligence of public officers, that the United States, in its business relations with private citizens, be subject to the general rules of law.

The nature and legal effect of a contract are not changed by its transfer to the United States. For instance, when the United States, through its lawfully authorized agents, becomes the owner of negotiable paper, it is obliged to give the same notice to charge an indorser as would be required of a private holder. It takes the paper subject to all the equities existing against the person from whom it purchased at the time when it acquired title, and cannot, therefore, maintain an action upon it, if at that time all right of action of that person was extinguished, or was barred by the statute of limitations. United States v. Nashville [C. & St. L.] Ry. Co., 118 U.S. 120, 125, 6 S.Ct. 1006, 30 L.Ed. 81; United States v. Bank of Metropolis, 15 Pet. 377, 10 L.Ed. 774." See also Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237; United States v. National Exchange Bank, 4 Cir., 1 F.2d 888, affirmed 270 U.S. 527, 46 S.Ct. 388, 70 L. Ed. 717; Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838.

Defendant contends that the "business relations" exception should be extended to require the United States or the State of Maryland to bring an action at law against its depository bank within the same period of limitations as any other depositor. But defendant has cited no case in which that requirement has been imposed on a sovereign. Nor has defendant cited any case in which suit against the bank was barred by the government's laches or delay in filing suit *after giving timely notice.* In the cases cited by the defendant the failure of the government to give timely notice of the forgery or to make demand on the bank, as required by applicable commercial law, destroyed the bank's opportunity to seek indemnity from prior endorsers or otherwise prejudiced the bank. E. g. United States v. First National Bank of Chicago, 7 Cir., 138 F.2d 681; Ladd & Tilton Bank v. United States, 9 Cir., 30 F.2d 334.

Defendant argues that there are elements of estoppel in this case, which make it analogous to the equity and ad- miralty cases cited above. It is not necessary to decide whether the United States may *ever* be barred by negligent and harmful delay in bringing a legal action, as distinguished from an equitable action. The defendant bank is not in a position to claim such an estoppel on the facts of this case. Defendant had timely notice of the government's claim, and could have protected itself by filing actions against the endorsing banks to recover on their respective warranties, either before the statute of limitations had run or within the additional period agreed to by counsel for the endorsers. For reasons of its own, it elected not to do so. The elements of estoppel are not present in this case. 19 Am.Jur. Estoppel, sec. 42, p. 642. See also 19 Am.Jur. Equity, sec. 498, pp. 343–344; Brown v. County of Buena Vista, 95 U.S. 157, 159, 24 L.Ed. 422.

The government's action is not barred by limitations, laches or estoppel.