**UNITED STATES of America**

v.

**THE Tug RICHARD J. MORAN (ex Maine), her engines, tackle, appurtenances, etc., in rem (Portland Towboat Company, Inc., claimant).**

**No. 194.**

United States District Court
D. Maine, S. D.
Jan. 10, 1962.

Alton A. Lessard, U. S. Atty., Portland, Me., Alan Raywid, Admiralty & Shipping Section, U. S. Dept. of Justice, Washington, D. C., for libellant.

Nathan W. Thompson, Portland, Me., for claimant.

GIGNOUX, District Judge.

On August 11, 1960 the United States of America filed this libel in rem against the Tug RICHARD J. MORAN (ex MAINE) for damages sustained by the SS SAMUEL JOHNSTON and the SS HELEN HUNT JACKSON in a collision, alleged to have been caused by the negligence of the tug, on March 29, 1947, at Brown's Wharf, Portland, Maine. The question now before the Court is whether the government's libel is barred by laches, an issue which was raised by claimant in its answer. All material facts have been stipulated.

At the time of the collision in 1947, the Tug RICHARD J. MORAN was owned by the Central Wharf Steam Towboat Company. The SS SAMUEL JOHNSTON and the SS HELEN HUNT JACKSON were Liberty-type steam vessels, licensed for freight service, owned by the United States and operated by the United States War Shipping Administration under General Agency Agreements with Eastern Steamship Lines, Inc. and Parry Shipping Company, Inc. Shortly after the collision, a claim for damages was made by the United States Maritime Commission against the Central Wharf Steam Towboat Company, and a brief correspondence relating to the claim ensued between counsel for the Maritime Commission and Nathan W. Thompson, Esq., attorney for Central Wharf Steam Towboat Company. This correspondence terminated with a letter from Mr. Thompson dated July 22, 1947, denying all responsibility for the collision. There was no further communication from the United States, or any agency or department thereof, respecting this claim until the filing of the present libel more than thirteen years later.

On May 25, 1951 claimant, a wholly owned subsidiary of the Moran Towing Corporation, a New York corporation, bought all the physical assets of Central Wharf Steam Towboat Company, including the Tug RICHARD J. MORAN. The purchase-sale agreement contained a personal guarantee against liens signed by the principal stockholders of the selling corporation. Subsequent to the sale of its physical assets to claimant, the remaining assets of Central Wharf Steam Towboat Company were distributed to its stockholders without any allowance for the present claim, the corporation became entirely inactive, and it was excused from filing further annual returns in 1956, Me. Rev.Stat. ch. 53, § 45 (1954). Its principal stockholders have since died, and their estates have been administered and closed.

Libellant has conceded that the tug has been continuously in and about Portland Harbor and within the jurisdiction of this Court since the date of the collision and that the libel could have been filed at any time during the four years which elapsed prior to its purchase by the claimant or during the nine years which passed between the purchase and the date on which it was filed. Libellant offers no explanation for the delay. There can be no question but that these circumstances would constitute laches, if the libellant were a private party. See The Key City, 14 Wall. 653, 81 U.S. 653, 20 L.Ed. 896 (1871); Merchants & Marine Bank v. The T. E. Welles, 289 F.2d 188, 190 n. 2 (5th Cir., 1961); Phelps v. The Cecelia Ann, 199 F.2d 627 (4th Cir., 1952); The Everosa, 93 F.2d 732, 735–36 (1st Cir., 1937); National Shawmut Bank of Boston v. The Winthrop, etc., 134 F.Supp. 370, 374 (D.C.Mass.1955) (Aldrich, J.).

Libellant relies, however, upon the well settled general proposition that the government is not barred by laches. United

States v. Kirkpatrick, 9 Wheat. 720, 22 U. S. 720, 735–737, 6 L.Ed. 199 (1824); United States v. Insley, 130 U.S. 263, 9 S. Ct. 485, 32 L.Ed. 968 (1889); see United States v. Summerlin, 310 U.S. 414, 416–418, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). Claimant does not question this general rule, but argues that this case falls within the exception to it recognized by The Falcon, 19 F.2d 1009 (D.C.Md.1927). In that case, a steamship owned by the United States and being operated by it in the marine carrying trade, as authorized by Acts of Congress, grounded in Baltimore Harbor on June 8, 1920. The grounding was alleged to have been caused by the negligent operation of two tugs. The United States delayed filing its libel against the tugs until April 28, 1924, almost four years later. During the intervening period the tugs had been sold to a bona fide purchaser who had neither knowledge nor notice of the government's claim. The government's claim was held to be barred by laches.[1]

▆▆▆ Libellant contends that this claimant was not a bona fide purchaser, and therefore that The Falcon is not applicable to this case, because Mr. Thompson, who as attorney for the Central Wharf Steam Towboat Company had corresponded with the Maritime Commission concerning this claim in 1947, was the attorney who incorporated claimant in 1951 and was an officer of claimant at the time of the purchase on May 25, 1951. The stipulation indicates that in May, 1951 the Moran Towing Corporation contracted to purchase the physical assets of Central Wharf Steam Towboat Company, and that Mr. Thompson, who was attorney for Central Wharf Steam Towboat Company in connection with the transaction, was requested by Moran Towing Corporation to organize a new corporation under Maine law for the purpose of taking title

to these assets. The record is clear that there was no financial relationship between the Moran Towing Corporation and Central Wharf Steam Towboat Company and that Mr. Thompson was not acting as attorney for the Moran Towing Corporation in connection with the purchase, Moran's interests being represented by its general counsel from New York City.

The legal steps necessary to incorporate claimant were completed in Mr. Thompson's law office, with Mr. Thompson, his associates and employees acting as the corporators, directors and officers for the purposes of its organization. At a stockholders meeting held at 11:00 A. M. on May 25, 1951, these temporary directors and officers resigned and were replaced by permanent directors and officers representing the Moran Towing Corporation. At the request of Moran Towing Corporation, Mr. Thompson was elected vice president, a position which he held at the time of the purchase, which was completed later that day. Neither Mr. Thompson nor any of the incorporating directors or officers have ever held any financial interest in the corporation, except for qualifying shares of stock, which were endorsed over upon election of the permanent officers.

The Court cannot accept libellant's contention that claimant was charged in 1951 with Mr. Thompson's prior knowledge of the government claim. Claimant's uncontroverted affidavits establish that no director or officer of Moran Towing Corporation or of claimant, other than Mr. Thompson, was informed of the claim until the filing of the libel in August, 1960. Mr. Thompson's knowledge of the claim was acquired as attorney for Central Wharf Steam Towboat Company in 1947, some four years prior to claimant's incorporation, and the Court is satisfied from the evidence that he was not aware,

---

1. That the government may be barred by laches when the rights of a bona fide purchaser have intervened has also been recognized in The No. 34, 13 F.2d 927 (D.C. Mass.1926); Id., 11 F.2d 287 (D.C.Mass. 1925); United States v. Fidelity-Baltimore National Bank & Trust Co., 173 F.Supp. 565, 567–68 (D.C.Md.1959)

(dictum); United States v. The Diesel Tanker A. C. Dodge, Inc., 148 F.Supp. 742, 744 (D.C.E.D.N.Y.1957) (dictum); United States v. Baltimore Towing Co., 144 F.Supp. 854, 855 (D.C.Md.1956) (dictum); cf. United States v. Stinson, 197 U.S. 200, 205, 25 S.Ct. 426, 49 L.Ed. 724 (1905).

of the matter at the time of the purchase in May, 1951, nearly four years after his last correspondence concerning it. This finding is consistent with the facts that the purchase-sale agreement contained a personal guarantee against liens signed by the principal stockholders of the selling corporation and that no allowance was made for this claim in its subsequent liquidation. Furthermore, there is nothing in this record to indicate that Mr. Thompson's duties as an officer of claimant were in any way related to this purchase. Under these circumstances, claimant is not charged with Mr. Thompson's prior knowledge of this collision or of the lien arising from it. See The Distilled Spirits, 11 Wall. 356, 78 U.S. 356, 366–368, 20 L.Ed. 167 (1870); Nationwide Life Ins. Co. v. Attaway, 254 F.2d 30, 34–36 (4th Cir., 1958); Phelan v. Middle States Oil Corp., 210 F.2d 360, 365–366, (2d Cir., 1954).

Although libellant asks this Court to reject the exception recognized by The Falcon, it presents no authority to the contrary, other than cases stating as a general rule that laches will not bar the government. While it is true that the broad proposition for which the government contends has been stated in many cases,[2] in no one of them does the actual decision embrace facts such as those presented in the case at bar, which involves the rights of an innocent purchaser of property without knowledge or notice of the government's claim. As stated by Judge Soper in The Falcon, 19 F.2d at 1012:

"When the rights of such a person do intervene, it is obvious that a grave injustice will be done by permitting the United States to proceed with its claim irrespective of its negligent and harmful delay. Nothing short of binding precedent would justify such a ruling."

The government cites no such precedent and has presented no persuasive reason to justify the ruling it seeks. To the contrary, this Court is in full agreement with the analysis presented by Judge Soper in support of his decision, 19 F.2d at 1014:

"There is sound reason why the government, because of its multitudinous affairs, should be protected against the negligence of its numerous officers, and should not be barred from asserting claims in the interest of the public by the mere lapse of time. Thus the immunity of the government against the defense of laches is preserved. But, on the other hand, this rule of law should not be used as an instrument of positive injustice in the hands of the United States to destroy the rights of innocent purchasers. Particularly is this true in the realm of admiralty where secret liens abound. The provisions of the acts of Congress in dealing with its merchant marine, whereby the government is subjected to the same rules as private citizens, are based upon a just foundation. The precedents do not require that a different spirit shall pervade the decision of the courts in applying the rule of laches to suits by the United States when the rights of third parties are involved."

The circumstances of governmental delay and resulting prejudice to an innocent third party in this case are extreme. They go well beyond those found suffi-

---

2. See The Falcon, 19 F.2d at 1012, n. 1, for a list of all such cases decided by the Supreme Court up to 1927. Supreme Court cases decided since The Falcon are: Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 125, 39 S.Ct. 407, 63 L.Ed. 889 (1919); United States v. Mack, 295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559 (1935); Guaranty Trust Co. v. United States, 304 U.S. 126, 132–33 (1938); United States v. Sum-

merlin, 310 U.S. 414, 416–418, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); United States v. Bethlehem Steel Corp., 315 U.S. 289, 331, 62 S.Ct. 581, 86 L.Ed. 855 (1942) (dissenting opinion of Frankfurter, J.); Costello v. United States, 365 U.S. 265, 281, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). There are also numerous lower court decisions, e. g., United States v. Garcia & Diaz, Inc., 291 F.2d 242, 246 (2d Cir. 1961).

cient to bar the government's claim in The Falcon, and this Court sees no reason to depart from the rule there announced.

A formal decree will be prepared and entered dismissing the libel.