## THE NO. 34.

(District Court, D. Massachusetts.   June 18, 1926.)

No. 2756.

**1. Admiralty ⟨⟩34.**

Failure of United States government for nearly five years to take steps to enforce lien against scow for alleged damages in collision with United States ship *held* to defeat lien, where innocent party had purchased scow.

**2. Collision ⟨⟩70.**

Scow *held* not liable for damages resulting in collision after having broken away from pier, where moored by tug, being adrift, and utterly powerless to prevent collision.

**3. Collision ⟨⟩57.**

Tow, if inert and helpless, is not responsible for faults of tug.

In Admiralty.   Libel by the United States against Scow No. 34, claimed by the Scully Company.   Libel dismissed.

Harold P. Williams, U. S. Atty., and George R. Farnum, Asst. U. S. Atty., both of Boston, Mass.

Charles S. Bolster and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., opposed.

BREWSTER, District Judge.   This is a libel brought by the United States, as owner of the steamship Oshkosh, against scow No. 34, to enforce its claim for damages resulting from a collision between the scow and the Oshkosh, which occurred at Pier 80, North River, New York, on September 5, 1920. The libel was filed August 11, 1924.   The Scully Company appears as claimant, and alleges in its answer that on August 17, 1922, it purchased the scow free and clear of any incumbrances, and without knowledge of any claim in favor of the United States; that the vessel had been within the jurisdiction of the Southern district of New York a greater part of the intervening time, and could have been easily proceeded against. It asks that the libel be dismissed, because of laches on the part of the government.   To this defense the libelant excepted, on the ground that it was not available in a case in which the United States was libelant.   This exception was overruled by Judge Lowell, who held that the defense could be set up against the government in this case.   See memorandum filed December 8, 1925, 11 F. (2d) 287.

[1] The allegations upon which the defense of laches is based are abundantly proved.   It appears that the government took no steps to enforce its lien for nearly four years; that,

in the meantime, rights of innocent parties had intervened, and also, in the meantime, rights of the claimant against its vendor had been lost.   In maritime law, these facts are sufficient to defeat any lien for damages. The Bristol (D. C.) 11 F. 156;   The Glenshee (D. C.) 289 F. 130, 1923 A. M. C. 952; The New Windsor, 13 F.(2d) 925, 1925 A. M. C. 958.   It follows that the decision of Judge Lowell leaves no alternative, other than to dismiss the libel because of delay in proceeding against the scow, without regard to the question of liability.

But the only evidence presented on this question was that offered by the government. The facts are not in dispute.   It may serve to prevent further litigation if I consider this evidence with a view of determining whether the scow was at fault.   Briefly, the facts are these:

[2] On the afternoon of September 4, 1920, scow No. 34 was picked up by a tug upstream on the Hudson river.   The tug then had several other barges and scows in tow, and picked up more on its way down the river until it arrived at Pier 90, where the tug moored the fleet to other barges already moored to the pier.   During the night some of the scows were withdrawn, and a tug rearranged the remaining boats, and scow No. 34 was made fast by her lines to another boat in the fleet, the Nellie.   This put scow No. 34 on the second string from the dock and on the downstream side.   In the early morning, the entire fleet of scows and barges broke away from the pier and began to drift downstream with the tide.   Two tugs endeavored to push the boats out into the middle of the river, in order to clear the dock, but they were unable to prevent scow No. 34 from swinging in against the steamship Oshkosh, which was then moored on the upstream side of Pier 86.   Immediately before the impact, the captain of the Nellie cut one of the lines and threw off the other line, by which the scow was fastened to that boat, which left the 34 alone and adrift, and utterly powerless to prevent a collision, as she had no means of propulsion.   As a result of the collision the Oshkosh was damaged.   The scow capsized shortly after.

[3] I find that the scow was in charge of a competent master, was seaworthy, and her ropes and tackle in good condition; that she was securely fastened to the Nellie; and that no fault of the master contributed to the collision.   The government's contention is apparently based on the theory that the law imposed a duty on the scow to see that the tug, in charge of the fleet, had used due care

in mooring a large number of boats to Pier 90. The complete answer to this claim is that the master had no control over those in charge of the tug. I am unable to see wherein the master failed in the full performance of his duty. It has been said to be "well established that the tow, if inert and helpless, is not responsible for the faults of the tug." Naamlooze Venootschap Maatschappij Stoomschip Barendrecht v. Moran Towing & Transportation Co. (C. C. A.) 9 F. (2d) 614. See, also, The William Guinan Howard, 252 F. 85, 164 C. C. A. 197.

I hold, therefore, that the libel should be dismissed for two reasons: (1) That it was brought too late; and (2) that the government has failed to establish any of its allegations of fault on the part of scow No. 34.

Decree may be entered accordingly.