THE LAKE GALERA.

UNITED STATES v. LAMBORN et al.

THE LAKE PACHUTA.

UNITED STATES v. JAMISON et al.

THE CHAPPELL.

UNITED STATES v. LAMBORN et al.

Nos. 234–236.

Circuit Court of Appeals, Second Circuit.
Aug. 23, 1932.

Courtland Palmer, of New York City (Arnold E. Feldman, of New York City, of counsel), for appellants Arbuckle Bros.

Alfred C. B. McNevin, of New York City, for appellants Lamborn & Co.

George Z. Medalie, U. S. Atty., of New York City (Myron H. Avery, Sp. Asst. to U. S. Atty., of Washington, D. C., of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

These are appeals from three interlocutory decrees in favor of the United States which had brought suits in admiralty to recover demurrage incurred by vessels at the loading ports in Cuba against the respondents, the consignees or receivers of cargoes of sugar in New York.

In the case of the steamship Galera, which belonged to the United States, there was a charter of the vessel to L. Munoz & Co. It provided among other things as follows:

"Demurrage in loading and-discharging, except as provided below, shall be payable by the charterer or his agent day by day on the basis of forty-eight cents (48¢) U. S. Currency per gross registered tonnage per day. * * *

"Demurrage at loading port shall be endorsed upon bills of lading, but whether so endorsed or not, upon proof of its having been incurred at said loading port, shall become a lien upon the cargo and shall be collectible in the same manner as the freight money. * * *

"Bills of Lading.

"Fifth. Bills of Lading on approved form shall be signed without prejudice to this Charter and subject to this contract as to freight, dead freight and all other conditions including loading, discharging, demurrage and despatch. * * *

"Lien on Cargo.

"Thirteenth. Vessel shall have an absolute lien on cargo for freight, dead freight and demurrage, both loading and discharging."

Similar clauses were incorporated in the charter parties for the steam tug Lake Pachuta and the steamship Chappell.

Bills of lading were issued for each of the three vessels containing the following clauses applicable to the respective vessels.

"Lake Galera.

" * * * He or they paying freight for same as per charter party, dated ———, 19—, all the terms and exceptions contained in which charter are herewith incorporated."

"Lake Pachuta.

"This bill of lading is subject to all provisions of the Charter Party and the Official Announcement of the United States Shipping Board Emergency Fleet Corporation authorized for West Indies sugar crop season 1918–19, under which this shipment is made and is without prejudice thereto. * * *

"Full freight to destination and * * * demurrage * * * shall be deemed fully earned * * * and the carrier shall have a lien on the goods or any part or proceeds for the whole thereof; and the Shipper, Consignee and/or assigns shall be jointly and severally liable therefor, and notwithstanding any lien therefor has been surrendered. * * *

"26. And finally that in accepting this bill of lading, the Shipper, Owner and Consignee of the Goods and holder of the bill of lading agree to be bound by all of its provisions, on this page and overpage, whether written, printed or stamped, as fully as if signed by all of them."

"Chappell.

"Freight and all conditions and exceptions to be in accordance with Charter Party covering this cargo, and said Charter Party to take precedence of this Bill of Lading."

In the case of steamship Lake Galera, a vessel belonging to the United States, the charter was by "Earn-Line S. S. Co., Owners or Chartered Owners," to Munoz for the purpose of carrying a cargo of sugar from Cuba to the United States and subject to Regulations of United States Shipping Board Emergency Fleet Corporation for the carriage of sugar. It was on the form of the latter corporation. Earn-Line Steamship Company operated the vessel as agent for the United States Shipping Board.

The demurrage sought to be recovered was upon two bills of lading, in each of which Munoz was the shipper. The first embraced 1,997 bags of sugar which was deliverable to "Lamborn Co. New York or his or their assigns." The second embraced 20,000 bags of sugar which was deliverable to "Lamborn Company (notify Arbuckle Brothers) or his or their assigns." As already stated, each bill of lading referred to the charter party, and provided that "all the terms and exceptions contained in which charter are herewith incorporated."

There was no statement upon either bill

of lading of any claim for demurrage. The clause of the charter party relating to demurrage (and already quoted) rendered such an indorsement unnecessary "upon proof" of the "demurrage having been incurred at said loading port." The first bill of lading covering 1,997 bags bore the indorsement of Lamborn & Co., and the second bill of lading covering 20,000 bags bore the indorsements of Lamborn & Co. and Arbuckle Bros., by J. P. Montgomery, attorney.

The amount of demurrage sued for was $8,661.84, of which the portion applicable to the 1,997 bags was $786.37, and to the 20,000 bags, $7,875.47. Although there was no notation on either bill of lading of the amount claimed for demurrage, the bill for 20,000 bags bore a statement of the time when the vessel arrived, was ready for loading, and when it commenced and finished loading. This indorsement on its face showed a rate of loading which indicated prima facie that loading demurrage was due. Furthermore, on June 21, 1920, Lamborn received from the ship's agents a bill amounting to $7,672.14 for demurrage at the loading port. Lamborn then had sufficient funds due Munoz for these shipments of sugar to pay the loading demurrage for the 20,000 bags which it had resold to Arbuckle at 20.5 cents per pound "cost and freight," and also for the 1,997 bags which Lamborn had sold to another; yet it paid the balance to Munoz without withholding anything to offset the demurrage. Lamborn indorsed over the bill of lading for the 20,000 bags to Arbuckle, and received the 1,997 bags themselves. Clearly the claim against Lamborn, if good, is limited to $786.37, and that against Arbuckle to $7,875.47.

The District Court granted an interlocutory decree holding Lamborn & Co. liable for loading demurrage, so far as the same had accrued, on the sugar which they received at the port of discharge, and holding Arbuckle liable for loading demurrage, so far as the same had accrued, on the sugar they received. Both have appealed.

In the case of the steam tug Lake Pachuta, a vessel belonging to the United States, there was a similar contract of affreightment by "Munson S. S. Line, Agents for C. H. Sprague & Son, Owners or Chartered Owners," with Compania Azucarera Vertientes, for a cargo of sugar, the charter of which on the regular form of the Fleet Corporation was in terms subject to regulations of the United States Shipping Board Emergency Fleet Corporation.

The demurrage sought to be recovered in this suit was from Arbuckle Bros. only. The bill of lading issued to J. Ferrer as shipper embraced 20,996 bags of sugar made deliverable to "order of Ferrer & Rabassa or assigns." As appears in the extracts from the charter and bill of lading, this bill of lading was made subject to all the provisions of the charter party and by its terms the "Shipper, Owner and Consignee of the goods and holder of the bill of lading agree to be bound by all of its provisions" and "Shipper, Consignee and/or Assigns shall be jointly and severally liable" for "freight to destination and * * * demurrage."

The bill of lading contained a notation of $9,156.64 claimed for loading demurrage. Ferrer & Rabassa, to whose order it was made, indorsed it and turned it over to Arbuckle Bros., who had purchased the sugar from them and had received it from the ship. The International Shipping Corporation, agents for the ship at New York, notified C. H. Sprague & Co. on May 28, 1920, of the claim for loading demurrage, and stated that the shippers were protesting against it, but they presented no claim for it to Arbuckle when the sugar was delivered and the freight was paid or until January 3, 1921, though up to June 12, 1920, Arbuckle still owed moneys to the shipper on the purchase price of the sugar from which the demurrage might have been deducted. The District Court granted an interlocutory decree against Arbuckle for such loading demurrage as might be established, with the usual reference to report. From such decree this appeal has been taken.

In the case of the steamship Chappell, a vessel belonging to the United States, the charter was by West India Steamship Company, Agent, United States Shipping Board, owners or chartered owners of the steamship, to L. R. Munoz & Co. for an affreightment of sugar made on the form of the United States Shipping Board Emergency Fleet Corporation used in case of the Lake Galera and the Pachuta. The demurrage sought to be recovered in this suit was from Lamborn & Co. only. There were four bills of lading in which Munoz was the shipper. None of them contained notations of the amount claimed by the ship for loading demurrage. But each contained the clause, "Freight and all conditions and exceptions to be in accordance with the Charter Party covering this cargo and said Charter Party to take precedence of this Bill of Lading," and the charter party, like those of the other vessels, provided

that "Demurrage in loading port shall be endorsed upon Bills of Lading, but whether so endorsed or not, upon proof of its having been incurred at said loading port, shall become a lien upon the cargo and shall be collectible in the same manner as the freight money."

All of the bills of lading were issued to Lamborn, and the sugar carried under each of them, except Exhibit 6, was made deliverable to Lamborn, and the sugar carried under that bill of lading was deliverable to "order," and the bill of lading was indorsed by Lamborn. Loading demurrage to the amount of $1,945.13 was claimed by West India Steamship Company from Lamborn at the discharging port, and Lamborn guaranteed in writing "on behalf of L. R. Munoz & Company to pay any demurrage which can be legally proven for account of the shippers" in order to obtain delivery of the cargo. The libel in this suit alleged demurrage amounting to $1,901.76. Lamborn withheld $1,915.70 from its remittances to Munoz to meet this claim. The District Court granted an interlocutory decree to the libelant for loading demurrage with the usual reference to report the amount due, and Lamborn & Co. have appealed.

The respondents in all three suits contend that no proof was made that any loading port demurrage was due under the bills of lading, but the trial judge found the contrary, and, after examining the record, we have no doubt that there was abundant proof to support his findings.

■■ The further objection is made to each decree that the United States was not a proper party plaintiff. All three charter parties stated that they were subject to regulations issued by the United States Shipping Board Emergency Fleet Corporation. We can take judicial notice that government owned vessels are only thus chartered where the government is principal. If it is, it can bring suits to recover freight and demurrage. United States v. Czarnikow-Rionda Co. (C. C. A.) 40 F.(2d) 214. The charter party in the case of the Chappell moreover shows in the very first clause that it is made on behalf of the United States Shipping Board, a governmental agency.

■ It is further objected that the government is barred by laches because it did not sue for many years after the causes of action had arisen and until the respondents might be prejudiced by having paid out funds which would have been available to set off against demurrage which the shipper was in the first instance bound to pay. This defense under our decision in United States v. Czarnikow-Rionda Co. is unavailable against the government. Davis v. Corona Coal Co., 265 U. S. 219, 44 S. Ct. 552, 68 L. Ed. 987.

■■ The objection to recovery most seriously urged is that the failure of the vessels to insist upon their lien for demurrage and the unconditional delivery of the sugar precluded recovery.

In the Lake Galera and the Pachuta suits the terms of the charters were unknown to Arbuckle Bros. or to Lamborn & Co., and even the masters of the vessels had no copy on board. Yet the bills of lading plainly incorporated the clauses of the charter parties. In the Lake Galera an effort to inspect the charter and to find out whether there was any demurrage should have been made by Arbuckle, and Lamborn was notified of the claim for demurrage at a time when he had moneys due the shipper in his hands. In the Pachuta, before Arbuckle had paid the shipper he was apprized of the claim for demurrage by notations on the bill of lading. Under such circumstances the neglect to give heed to the provisions of the bills of lading must be laid at the door of those who received the cargo.

In Yone Suzuki v. Central Argentine Railway, 27 F.(2d) 795, we expressly held that one who receives cargo under such circumstances is liable to pay loading demurrage. Whether the obligation of one who receives the cargo is given in exchange for the waiver by the shipowner of his lien, or whether the obligation is to be regarded as a gradual extension of the law merchant is hard to say. Certain Logs of Mahogany, Fed. Cas. No. 2,559; Shaw v. Thompson, Fed. Cas. No. 12,726; Sumner v. Walker (D. C.) 30 F. 261; Emmons Coal Mining Co. v. Ropner (C. C. A.) 31 F.(2d) 948; Vane v. A. M. Wood & Co. (D. C.) 231 F. 353. But whatever be its origin it has been the tendency in the American courts to impose it upon a person receiving cargo, when the bills of lading provide that the consignee and his assigns shall pay freight or demurrage (which is extended freight). Such an obligation promotes expedition in discharging cargo and saves the delay in holding it while the master and consignee are disputing over the amount of the vessel's lien. We think it ought to be applied in the absence of an agreement to the contrary. Such an obligation has laid upon land carriers under

880

the decisions of New York and Rhode Island. Davison v. City Bank, 57 N. Y. 81; Hatch v. Tucker, 12 R. I. 501, 34 Am. Rep. 707. The Court of Appeals of the Eighth Circuit reached the same conclusion in Union Pacific R. Co. v. American Smelting & Refining Co., 202 F. 720, and so perhaps would the Massachusetts courts. New York, N. H. & H. R. R. Co. v. Sampson, 222 Mass. 311, 110 N. E. 964.

The Supreme Court has construed the Interstate Commerce Act (49 USCA § 1 et seq.) in a way that reaches the same result. Pittsburgh, etc., Ry. Co. v. Fink, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151. Thus it appears that the federal rule as to land carriers imposes the obligation sought to be imposed here. Moreover, this has been the law of England governing water carriers since the passage of the Bills of Lading Act of 1854, after which the obligation ceased to be merely presumptive and became fixed.

The decision of the court below has the merit of imposing an obligation analogous to that imposed in various states of the Union and under the Interstate Commerce Act and the English Bills of Lading Act, and thus promotes a desirable uniformity.

■ The evidence offered to prove a custom in the collection of loading demurrage and in the enforcement of claims therefor was so various and doubtful in its implications that the trial judge properly refused to find that any definite custom had been established. Moreover the written contracts imposed such clear obligations that the customs sought to be proved could not change them.

■ In the Lake Galera suit, Arbuckle Bros. insist that Lamborn should have been required to pay the $7,975.47, for which Arbuckle was held liable as receiver of the 20,000 bags, because Lamborn had sold the sugar to Arbuckle on a "cost and freight" basis. But such a contract of sale was nonmaritime, and its breach could not be asserted had Arbuckle attempted to implead Lamborn under Admiralty Rule 56 (28 USCA § 723), and cannot be the basis of a right of contribution here. Aktieselskabet Fido v. Lloyd Braziliero (C. C. A.) 283 F. 62; Soderberg v. Atlantic Lighterage Corporation (C. C. A.) 19 F.(2d) 286; Lamborn & Co. v. Compania Maritima Del Nervion (D. C.) 19 F.(2d) 155. Any recovery of demurrage against Lamborn in the Lake Galera suit must therefore be limited to $786.37.

■ Dispatch money was earned on certain cargo loaded on the Chappell at Antilla. No demurrage was claimed upon sugar loaded at Antilla, but only upon that loaded later on the same voyage at Nuevitas. A stipulation was made in the Chappell suit providing that dispatch money amounting to $361,61 might be offset against any demurrage recovered on behalf of the Chappell if Lamborn & Co. were "entitled to recover the dispatch money." We can discover no reasons to suppose that the bill of lading gave Lamborn any right to the dispatch money. Under article fourth of the charter party it was payable to the charterer Munoz. Dispatch money, of course, could not furnish the basis for a lien for which the personal obligation of Lamborn & Co. might be exchanged.

The interlocutory decrees in all three suits are affirmed, with costs to the appellees.