### THE MAMEI.

### THE MONTROSE.

### THE CASPIAN.

### Petition of MARTUG TOWING CO.

#### Nos. 45, 53.

District Court, E. D. Pennsylvania.
Aug. 25, 1944.

Howard M. Long, of Philadelphia, Pa., for Ritner K. Walling.

Rawle & Henderson, and Joseph W. Henderson, all of Philadelphia, Pa., for tug "Caspian" and Martug Towing Co.

Krusen, Evans & Shaw, of Philadelphia, Pa., and Foley & Martin, and Christopher E. Heckman, all of New York City, for tug "Montrose" and Eastern Transportation Co.

GANEY, District Judge.

A libel was filed by Ritner K. Walling, owner of the barge Mamei, against the Tug Montrose, owned by the Eastern Transportation Company, and the Tug Caspian, owned by Martug Towing Company. The Eastern Transportation Company on behalf of the Tug Montrose filed a cross-libel against the Mamei and the Caspian and their respective owners, and in addition a proceeding for the limitation of liability as to the Martug Towing Company, owner of the Tug Caspian, has been instituted, and by agreement of counsel and approval of the court this matter is to await the decision of the Trial Judge on the question of liability for the collision.

The barge Mamei, a dumb barge, dead weight ten thousand tons, 355 feet overall length and a beam of 52 feet, loaded with 6,500 tons of coal, left Town Point, at about 9 A.M. on May 5, 1943, which is approximately the western end of the Chesapeake and Delaware Canal, towed from her stern by the Tug Caspian on her port side, which is approximately 80 feet overall in length with a beam of 21 feet 6 inches and on her starboard side by the Tug Hudson approximately 93 feet overall in length with a beam of 20 feet. Captain Middleton of the Tug Caspian was in charge of the Mamei and was the navigating officer of the entire flotilla. The Mamei had two white all horizon lights, 6 feet apart on a cross-arm aft of the wheelhouse, and 6 feet above it which were from 36 to 38 feet above the surface of the water. She also had a stern light, showing to the rear, which was screened. Before starting from Town Point, an oil lantern was lighted showing a white light and hung at her port bow 6 or 7 feet down from the forecastle rail, it being the custom in the Chesapeake and Delaware Canal to show an oil white light on the port bow of a barge in tow with a tug alongside. The lights inside of the forecastle of the Mamei were lighted and some light could be seen through three glass portholes, but none showed forward. On each side of the main deck of the Mamei, forward of the bridge deck, were four so-called "king-posts", 50 feet apart, 20 feet above the deck and 18 inches in diameter.

The Tug Caspian had red and green running lights 20 feet aft of her stem on top of her pilot house, 21½ feet above the surface of the water, and she also had two white towing lights arranged vertically on her forward mast 5 feet aft of her stem, the top light being 42 feet and the lower light 38 feet above the surface of the water, and both showing all around the horizon. She also carried a white range light on top of her after mast, 51 feet above the surface of the water, which showed all around the horizon.

The Tug Hudson had red and green running lights on top of her pilot house, 24 feet above the surface of the water. She had a white range light forward 15 or 16 feet above the surface of the water, as well as two white towing lights vertical on her mast, the top one being 44 feet and the lower 39 feet above the surface of the water, both of them showing all around the horizon.

The night of May 5, 1943, was clear and it "was a good night for seeing lights", it being testified to that lights could be seen a distance of 4 or 5 miles. At the time the flotilla left Town Point, headed east, the tide was running in the direction it was headed, due east, and by a short wave radio telephone word was given that the flotilla was proceeding east in the Canal, which was admittedly heard by Captain White of the Tug Montrose, who at that time was at Reedy Point, which is the eastern end of the Chesapeake and Delaware Canal; the flotilla proceeded eastwardly without incident, passing the Tugs Startle and Baldrock, the latter of which is a sister ship of the Tug Montrose, and at or about 11:10 P.M. the flotilla reached a slight right-hand bend in the canal known in that vicinity as Guthrie's Run Bend.

The Tug Montrose, a steam tug, was about 142 feet long, having nothing in tow leaving Reedy Point, the eastern end of the canal, at 10:16 p.m. and had traveled approximately 11½ miles at the time of the collision which was at approximately 11:10 P.M. Captain White, who was in charge of the Tug Montrose testified that when he reached Guthrie's Bend with its slight curve, he was approximately in the center of the canal which at that point is 250 feet wide and was varying a little from side to side and that the only lights he saw were two white lights in a vertical position on the north shore of the canal, and he at once thought they were the lights of the Tug Startle, but as he came on, he saw red and green running lights on the south bank of the canal, at which time he was from 500 to 1,000 feet away, and these latter lights seemed in nowise to him connected with the white lights on the north shore of the canal. Upon seeing these, he testified, he slowed up cautiously, then decided that both lights were on vessels going in the opposite direction to him, and that he would go in between and make the passing, although he gave no blast of his whistle to indicate a passing, or as he testified he thought it might confuse the two vessels since he believed he could go in between without any mishap. He testified that he saw no other lights except as indicated, two vertical lights on a vessel on the north bank and red and green lights on a vessel on the south bank, and did not see any lights at all on the Mamei, and did not see the barge Mamei itself until its shadowy outline appeared before him when he was 70 feet away, when he

gave orders to check the speed and reverse the engines, which threw the Tug Montrose to port and crashed into the port side of the bow of the Mamei, bounced back, slowed up a little and went to its starboard side, passing 75 or 80 feet from the Tug Caspian which was on the port side of the Mamei and continued on to Reedy Point, without ascertaining what damages, if any, were caused to the barge Mamei. The damage to the Montrose was to its starboard side and stem which bore the main impact of the collision. Captain Middleton in charge of the barge Mamei testified that he first saw the Tug Montrose showing a red light one-half mile away at which time he gave one blast, which is the signal for a port to port passing. The entire flotilla in charge of Captain Middleton, including the Mamei and the Tugs Caspian and Hudson, were at this time completely on the south side of the canal as is indicated by Captain Voliva of the Hudson's warning to Captain Middleton that his vessel was going close to Buoy No. 35 on the south bank. The Montrose continued to show its red light although it never returned the signal of Captain Middleton, when all at once when about 200 feet from the Mamei the Montrose showed both her red and green running lights and then a few seconds later his green light was showing. Captain Middleton testified that when he saw this he ordered the engines on the Caspian reversed, full-astern and a danger signal blown, which the mate blew, consisting of four short whistles, and immediately the Montrose collided with the Mamei at its port bow. There was some testimony that this danger blast was not heard, as for instance by Captain Voliva of the Hudson, but he did hear the order by Captain Middleton to blow it and Mate Geddes of the Caspian testified he did blow the blast. While others on the Mamei did not hear it blown, the fair inference from all the testimony is that the blast was blown.

I think there can be no doubt here but that Captain White of the Tug Montrose was negligent. He admitted being confused upon seeing the white vertical lights on the north bank of the canal and the red and green running lights on the south bank of the canal, but other than slowing up a little and then proceeding, he did nothing. This conduct was in direct violation of Article 18, Rule I, of the Inland Pilot Rules, 33 U.S.C.A. § 203, rule 1, and also Rule III, which latter rule provides as follows: "If, when steam vessels are approaching each other, either vessel fails to understand the course or intention of the other, from any cause, the vessel so in doubt shall immediately signify the same by giving several short and rapid blasts, not less than four, of the steam whistle." It seems to me this duty was incumbent upon Captain White upon seeing the situation which was presented to him, taking his own testimony to be true, that the two sets of lights were in nowise related, each to the other. Furthermore, Captain White violated the "Starboard Hand" Rule, which is fundamental for the nautical road, covered by Article Twenty-five (25) of the Inland Pilot Rules, 33 U.S.C.A. § 210, which provides as follows: "In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel." It was plainly the duty of Captain White to keep the Tug Montrose always on the north side of the channel, and consequently if he had so done, no mishap would have been occasioned. Furthermore, it is difficult to believe the testimony of Captain White that these lights were so widely separated as the total beam or width of all three vessels was less than 95 feet and since it is obvious that the white lights were those of the Caspian and the red and green those of the Hudson, it is hard to believe that he saw both of these lights on opposite banks of the canal, which at that point is about 250 feet in width. Furthermore, it is additionally difficult to believe that he saw two vertical white lights of the Caspian and did not see the masthead light on the same, which was 51 feet above the surface of the water, nor the two white lights above the wheelhouse on the Mamei 36 to 38 feet above the water, nor the white tow light and the running lights of the Tug Hudson, although he did see her red and green running lights.

One explanation advanced by counsel for the Tug Montrose is that the king-posts on the deck of the Mamei obscured the running lights of the Caspian as well as its mast-head light. However, at best these king-posts being 50 feet apart, four on each side of the main deck of the Mamei, could have obstructed light but momentarily and in view of the slight curvature of the canal at this point and both vessels continually moving, it would seem that at some time or other, a competent lookout could have been able to disclose at least one of the running

lights of the Caspian, to say nothing of the mast-head light on it, and the tow lights on the Mamei. In addition Captain White never saw the white lantern on the port bow of the Mamei although he headed directly for it and the impact of the two vessels was only a very short space away from where the lantern was hanging.

 Counsel for the Tug Montrose have argued that if there is liability here on its part, there is also contributory fault on the part of the Caspian, and this view is also advanced by counsel for the barge Mamei, the former on the ground of improper lighting on the part of the Mamei and its tugs Caspian and Hudson, which, however, I do not agree with as hereinabove indicated, and the latter on the ground that it was the duty of the Tug Caspian upon not having heard the port to port signal answered, to repeat it, and in the event of doubt to stop and reverse until the course of the other vessel is ascertained. The Gerry, D.C., 161 F. 413; The Atlantic City, D.C., 136 F. 996. However, I do not feel that this admittedly true rule of law is here applicable. Captain Middleton was here entirely responsible for the entire flotilla since the Mamei was a dumb-barge. The No. 34, D.C., 13 F.2d 927, 928. He gave a one signal blast indicating a port to port passing when he saw the Montrose about one-half mile away. While it is true that no answer was given to his signal, since the testimony shows that the only light showing to him was the red running light on the Montrose, and hence it was fair for him to assume then, in the absence of a return signal, that the Montrose was going to make a port to port passing. This status continued until the Montrose crossed the bow of the Mamei approximately 200 feet away, when the red and green lights of the Montrose were showing for the first time, which indicated that the Montrose was going down straight ahead toward the Mamei. Immediately thereafter the red light was cut out and the green was showing, which indicated that the Montrose had changed its course, showing its starboard side from the port bow of the Mamei. The testimony of Captain Middleton was that the Montrose was approximately two points on the port bow, or that the angle of the collision was about 45 degrees. In addition the time which elapsed between the showing of the red and green lights and the cutting out of the red light was but a very few seconds and as indicated by Captain Middleton by the snapping of his fingers. Accordingly, it would seem that there is no reason here for any apportioning of damages by reason of contributory fault, since in the short time at his disposal from the time the red and green lights of the Montrose were showing down to the actual impact, Captain Middleton did all that was requisite of anyone in giving the orders for a danger signal blast as well as an order to reverse the engines. As has been indicated previously, in the showing of the red light, even in the absence of a return signal, to that which he had given for a port to port passing, Captain Middleton had every right to assume a port to port passing. The Kinetic, 3 Cir., 40 F.2d 258. Furthermore, it seems to me that the fault on the part of the Montrose as here set forth is so obvious and inexcusable that to make out a case for apportioning of the damages, the evidence to establish the fault of the Caspian should be clear and convincing and certainly this is not the case in this instance as no liability can be attached to the Caspian. The City of New York, 147 U.S. 72, 75, 13 S.Ct. 211, 37 L.Ed. 84; The Priscilla, 1 Cir., 55 F.2d 32.

Accordingly, a decree shall be entered on the Ritner K. Walling libel, No. 45 of 1943, granting the Mamei owner full recovery for its damages from the Montrose, owned by the Eastern Transportation Company, and a decree shall be entered in the Eastern Transportation Company libel, owner of the Montrose, against the Mamei and Caspian in favor of the Mamei and Caspian, and in view of the liability of the collision being imposed on the Montrose there is no necessity for limitation of liability proceedings as to the Martug Towing Company, owner of the Tug Caspian.