Thomas **FINLEY**, Libelant,

. v.

**UNITED STATES** of America,
Respondent.

**UNITED STATES** of America,
Third-Party Libelant,

v.

**TODD SHIPYARDS CORPORATION,**
Third-Party Respondent.

Civ. A. No. 326–51.

United States District Court,
D. New Jersey.

Feb. 18, 1955.
On Reargument April 28, 1955.

Hanrahan & Brennan, New York City, for libelant.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., Kirlin, Campbell & Keating, New York City, for respondent United States.

Paul P. Koch, New York City, for impleaded-respondent, Todd Shipyards Corp.

MODARELLI, District Judge.

On April 16, 1951, Thomas Finley, a resident of New Jersey, filed in this court a libel against the United States for the recovery of damages allegedly resulting from personal injuries sustained on May 19, 1947, while employed by Todd Shipyards Corporation as a welder in one of the tanks aboard the S.S. Neosho moored at Todd's yard in Hoboken, New Jersey. Finley alleged he was injured "by reason of the * * * negligence of the respondent, its servants, agents and employees by reason of the unseaworthy condition of the * * * vessel and its appliances, in that the respondent failed * * * to provide the libelant with a reasonably safe place wherein to work, and more particularly in that the vessel was unseaworthy by reason of the * * * negligent and unsafe manner in which certain oils, gasoline or gasses were allowed to accumulate, which suddenly burned and exploded." It is undisputed that the Neosho was a vessel owned by the United States.

The action was brought pursuant to the so-called Suits in Admiralty Act of March 9, 1920, as amended, 46 U.S.C.A §§ 741–745 and the Public Vessels Act of March 3, 1925, 46 U.S.C.A. § 781 et seq.

This suit was preceded by other litigation commenced by Finley based on the same facts involved in this suit. On November 30, 1949, Finley filed a civil action in a New York State court against the Marine Transport Lines, Inc., the general agent employed by the United States to perform certain shoreside husbanding services in connection with the Neosho. That action was removed to the United States District Court for the Southern District of New York, which on the authority of Cosmopolitan Shipping Co., Inc., v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692, dismissed the complaint on October 30, 1950. Finley filed the libel at bar allegedly pursuant to the provisions of 46 U.S.C.A. § 745, as amended, which extended the time within which certain suits in admiralty could be brought. Although the issue is not now before the court, the United States in an amendment to its answer has denied Finley's allegation that he is entitled to bring this action, arguing that neither the action against Marine Transport nor a prior libel against the United States pursuant to the Suits in Admiralty Act were timely commenced as is required by that Act.

We are now concerned with a motion to dismiss an impleader action. The motion is by the impleaded-respondent, Todd, a New York corporation doing business at Hoboken, New Jersey, brought into the suit by an order entered on June 4, 1954, granting the United States' petition to implead filed on May 25, 1954, under Admiralty Rule 56, 28 U. S.C.A., relating to the "right to bring in party jointly liable." Todd also moves, in the alternative if its motion to dismiss is denied, to implead its subcontractor, Guardino & Sons, Inc.

On or about January 1, 1946, the United States and Todd entered into a contract to reconvert the Neosho from a naval tanker to a merchant tanker. At the time of his injuries, Finley was an employee of Todd carrying out some of the work to be done pursuant to that contract. The impleader petition alleges that (1) if the United States is held liable to Finley, Todd is liable to the United States on its indemnity provision in the contract,[1] (2) Todd also agreed to exer-

1. "(a) The Contractor shall exercise reasonable care and use its best efforts to prevent accidents, injury or damage to all employees, persons and property in and about the work, and to the vessel or portion thereof upon which work is done.

"(b) The Contractor does indemnify and hold harmless the Administrator, the

cise reasonable care in its work and to protect the Neosho from fire and other damage, which it failed to do, thereby causing Finley's alleged injuries, (3) if as alleged by Finley, the Neosho was unseaworthy, it was due to the conduct of Todd's employees, and (4) the active negligence of Todd caused Finley's alleged injuries, the alleged negligence of the United States having been merely passive.

The United States and Todd have submitted a total of six briefs. In support of its motion to dismiss the impleader action, Todd argues: (1) Laches bars the impleader in that when Finley filed his libel against the United States, the "alleged contract of indemnification was in effect and the respondent was legally chargeable with * * * the contents thereof," and it had on that date (April 16, 1951) all of the rights not asserted by it until over 37 months later; during that period Todd was not a party in the litigation so that "it was unable to take any steps to preserve vital testimony of its employees and servants, having charge of the work of converting the * * * Neosho at the time when Finley sustained his injuries"; (2) the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, sets forth the employer's liability "exclusive of all other liability to the injured employee and anyone otherwise entitled to recover damages from the employer, because of injuries sustained by the employee"; and (3) the United States has no right to contribution or indemnification from Todd.

The United States argues: (1) The impleader is timely in that Admiralty Rule 56, 28 U.S.C.A., permits it even "at any later time during the progress of the cause that the court may allow"; (2) the doctrine of laches does not apply in that at the present time Todd cannot show prejudice because the six-year statute of limitation pertaining to contracts does not bar an action by the United States based on Todd's indemnity promise until six years subsequent to the date on which the United States is found liable to Finley; (3) the Longshoremen's and Harbor Workers' Compensation Act does not preclude this impleader; and (4) if Finley's injuries occurred because a cofferdam [2] in which he was working was not gas free, then the explosion was caused by the negligence of Todd, since Todd had agreed to gas free the vessel before allowing any of its employees to enter the tanks or cofferdams of the vessel.

As to argument (1) by the United States, while the impleader procedurally is timely, Rule 56 does not eliminate the right of an impleaded-respondent to invoke defenses in a motion to dismiss. Since the court considers its answer to the laches question to be dispositive of this motion, the remaining arguments will not be discussed.

Aside from the question of a substantive showing of laches, is laches applicable in this impleader action brought by a contract indemnitee against its indemnitor whose indemnity promise is contained in a contract to convert a vessel and the main action is a libel in admiralty against that indemnitee? No question has been raised as to whether laches can be applied against the sovereign in this case. See the discussion of the problem in The New

United States, its agencies and instrumentalities, the vessel and its owner, against all suits, actions, claims, costs or demands (including, without limitation, suits, actions, claims, costs or demands for death, personal injury, and property damage) to which the United States, its agencies and instrumentalities, the vessel or its owner may be subject or put by reason of damage or injury (including death) to the property or person of any one other than the United States, its agencies and instrumentalities, the vessel or its owner, arising or resulting from the fault, negligence, wrongful act or omission of the Contractor, or any subcontractor, its or their servants, agents or employees."

2. Cofferdam is defined as a water-tight structure attached to a ship's side when repairs are made below the water-line. Funk & Wagnalls New Standard Dictionary, 1951.

Windsor, 5 Cir., 13 F.2d 925, affirmed, United States v. Jacksonville Forwarding Co., 18 F.2d 39; The No. 34, 1 Cir., 13 F.2d 927.

Although counsel for the United States has not clearly stated the argument, if the contract between the United States and Todd and the indemnity provision therein are not maritime in nature, then the impleader action by the United States would be a common law contract action, laches would not apply and the six-year statute of limitation on contract actions would apply. Moreover, the proper characterization of this contract and its indemnity provision are necessary because "It has been a subject of controversy whether a petition under the 56th Rule may be based upon a claim of recovery which would not sustain an independent action in admiralty or, in other words, whether the nonmaritime character of the third party's obligation, when considered in itself, debars the admiralty court from bringing such third party before it to respond to the principal obligation which is maritime." Benedict on Admiralty, 6th Ed., Vol. II, Section 350, page 537.

(a) Is the contract to convert the vessel maritime? (b) If it is, nevertheless, ought the court sever the indemnity provision? and (c) Is that provision maritime?

MacDonald v. United States, D.C., 79 F.Supp. 953, held that a contract to convert a dry cargo vessel into a mule carrier is a maritime contract so as to allow the contractor to be impleaded in a personal injury action against the shipowner who alleged in the impleader that under the contract he had a right to indemnity. In that case, as in the case at bar, the libelant was an employee of the impleaded-respondent who allegedly had been injured aboard a vessel owned and operated by the United States, and there as here, the United States and the employer-impleaded-respondent had contracted to convert the vessel. In the Mac-Donald case the court rejected the argument that the contract was not maritime, saying:

"* * * citation of authority is surely unnecessary on the point that a contract to convert a vessel is a maritime contract. The traditional test is, of course, whether the agreement has to do with the business, commerce, or navigation of the sea. There has been some difficulty about some so-called 'mixed contracts'. The better opinion seems to be that if the maritime feature of the agreement is the dominant feature, then admiralty will take jurisdiction. But I have never seen it suggested that a contract to convert a ship is nonmaritime." 79 F.Supp. at page 954.

American Stevedores, Inc., v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011, was a case in which a longshoreman was injured while on board a United States vessel. He was an employee of a stevedoring company which was loading the vessel under a stevedoring contract with the United States. He filed a libel against the United States which impleaded the company charging it with fault and setting forth an indemnity provision of the stevedoring contract. In the Supreme Court, the impleaded company argued that the court below as an admiralty court did not have jurisdiction of the indemnity provision of the stevedoring contract, and that, therefore, the decree granting full indemnity to the United States from the company was beyond the court's power. The Supreme Court, in holding that a stevedoring contract is maritime, refused to sever the contract provision for indemnity for damages arising out of the performance of wholly maritime activities because it "would only needlessly multiply litigation. Such a provision is a normal clause in contracts to act for others and no more determines the nature of a contract than do conditions on the time and place of payment." 330 U.S. at page 456, 67 S.Ct. at page 853.

Severn v. United States, D.C., 69 F.Supp. 21, 22, was a case in which the libelants and the decedent were employees of Cardinal Engineering Company, respondent-impleaded, which was working

under a contract with the United States in repairing two vessels then in New York Harbor and owned and operated by the United States. The employees filed a libel against the United States to recover damages as a result of injuries received during the repair work. The United States impleaded Cardinal, alleging two causes of action: (1) Cardinal controlled parts of the vessel where the injuries occurred and it had a duty to eliminate any dangerous conditions thereat; the United States demanded indemnity or contribution from Cardinal; and (2) Cardinal contracted to indemnify the United States from suits arising out of Cardinal's negligence in the performance of its work. Cardinal argued that the indemnity provision in the ship repair contract should be severed from the contract and that any cause of action based on the contract was not within the admiralty jurisdiction. The court held that: "A contract for repairs to ships in the navigable waters of this harbor is a maritime contract. Such a contract is within the jurisdiction of the Admiralty. The indemnity clause is not a separable agreement; it is part of and incidental to the contract for repairing the ships * * *."

Green v. War Shipping Administration, D.C., 66 F.Supp. 393, 395, was a case in which the libelant commenced an action against the United States for personal injuries allegedly sustained on board a vessel owned and operated by the United States. The libelant alleged that he was employed by Cardinal Engineering Company as a rigger and that, while repairing the vessel, due to its negligence he fell and was injured. The United States impleaded Cardinal, libelant's employer, which was making repairs pursuant to a contract with the United States. The contract provided that Cardinal would place proper safeguards for the prevention of accidents and use its best efforts to prevent accidents or injury to persons or property. The contract further provided that Cardinal would indemnify the United States from all suits and damages to which the United

States was subject by reason of injury to the person or property of another arising or growing out of the fault or negligence of Cardinal or any subcontractor. In the impleader petition it was alleged that if the injuries to the employee were caused or contributed to by any negligence other than that of the employee, the negligence of Cardinal in performing its duties under the contract caused or contributed to the injuries; that Cardinal was solely liable for whatever amount, if any, might be decreed and was answerable to the United States for any amount awarded against it. In short, the United States as respondent alleged as the basis for its impleader that any injuries to libelant were not caused by its negligence but that of Cardinal in carrying out its contractual duties. Cardinal, the respondent-impleaded, argued that the indemnification clause was "clearly separable from all other clauses of the contract and from all other matters alleged in the libel and petition and that any cause of action based thereon is not within the admiralty or maritime jurisdiction of this court." The court held:

"* * * With this contention the Court is unable to agree. The respondent is entitled to be indemnified against any loss due to the negligence of the respondent-impleaded. See Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S.A., 2 Cir., 92 F.2d 37, certiorari denied 302 U.S. 744, 58 S.Ct. 145, 82 L.Ed. 575; Porello v. United States, 2 Cir., 153 F.2d 605, 1946 A.M.C. 163, 286. The indemnification clause is not separable from other clauses of the contract.

"The Admiralty Court having jurisdiction, respondent-impleaded is not entitled to a separate trial nor to a jury trial of the issues raised between respondent and respondent-impleaded."

In the case of Crawford v. Pope & Talbot, Inc., 3 Cir., 206 F.2d 784, at pages 793–794, the Court of Appeals for this Circuit in discussing the scope and extent of its review tacitly recognized that an

indemnity contract is maritime whether it be a contract implied from the relationship of the parties or an express contract.

The United States cites Redman v. United States, 2 Cir., 176 F.2d 713 and Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd., 204 F.2d 366, 37 A.L.R.2d 1117, certiorari denied 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368, which hold that where the libelant files his libel within the period allowed by the analogous state statute of limitation, it is the respondent's burden to show laches. The rule, however, is not inflexible for in Gardner v. Panama Railroad Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31, a suit in admiralty, the respondent argued laches because the Canal Zone one-year statute of limitation barred a personal injury action at law and the action had been commenced beyond that period. The Supreme Court discussed, 342 U.S. at pages 30 and 31, 72 S.Ct. at page 13, the relationship between the state statute of limitation and laches:

"Though the existence of laches is a question primarily addressed to the discretion of the trial court, the matter should not be determined merely by a reference to and a mechanical application of the statute of limitations. The equities of the parties must be considered as well. Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief." Citing cases.

And in Taylor v. Crain, 195 F.2d 163, 165, the Third Circuit Court said: "But it should be remembered that a decision on the issue of laches should be based on an appraisal and a balance of all the equities in the case." And in Kane v. Union of Soviet Socialist Republics, 3 Cir., 189 F.2d 303, 306, certiorari denied 342 U.S. 903, 72 S.Ct. 292, 96 L.Ed. 676, the court said: " * * * it is the function of the admiralty court to determine whether under all the circumstances the doctrine of laches is applicable. * * *"

On the basis of the foregoing authority, the court concludes that (a) the contract between the United States and Todd to convert the vessel is maritime; (b) the indemnity provision ought not be severed from the contract; and (c) the indemnity provision is maritime. Thus, the doctrine of laches is applicable. What has been said applies to the four causes of action alleged by the United States in its impleading petition.

The United States also cites Erie Railroad Company v. Erie & Western Transportation Company, 204 U.S. 220, 27 S.Ct. 246, 51 L.Ed. 450; James McWilliams Blue Line, Inc., v. Esso Standard Oil Co., D.C., 123 F.Supp. 824, 826, for the proposition that where a respondent claims a right to indemnity from a third person not then a party to the suit, the respondent properly may defend the suit and then if it is held liable commence a suit against the alleged indemnitor. The Erie Railroad case was not a suit for indemnity and there is no discussion in the opinion regarding when a contract indemnitee may commence an action against an indemnitor.

In the McWilliams case, there was a motion to dismiss an impleader on the ground of laches. The pertinent part of the court's opinion is:

"In applying the doctrine of laches, the courts of admiralty customarily follow the analogy of the state statute of limitation. Redman v. United States, 2 Cir., 1949, 176 F.2d 713. It is a general rule that, for the purposes of the statute of limitation, a claim for indemnity accrues only when the one seeking indemnity has been subjected to liability, and it has been so held under the New York statute. Satta v. New York, 272 App.Div. 782, 69 N.Y.S.2d 653; Prost v. City of New York, 190 Misc. 197, 73 N.Y.S.2d 811.

"Since the statute of limitation has not barred this claim, and there is no showing of prejudice to respondent-impleaded in any way, the exceptions to the impleading pe-

tition are overruled and the motion to dismiss is denied."

While in that opinion the court alludes to a general rule, only two New York State cases, based on a New York statute, are cited in support. Moreover, unlike the case at bar (discussed infra) in that case there was no showing of prejudice.

■■ Has Todd shown laches? It is Hornbook law that laches consists of two elements: Inexcusable delay in commencing a suit and prejudice to the respondent resulting from such delay. The court should consider the equities of the case, and not rely merely upon the lapse of time. United States v. Alex Dussel Iron Works, Inc., 5 Cir., 31 F.2d 535; Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd., supra. See Taylor v. Crain, supra. The United States did not seek to implead Todd until over thirty-seven months subsequent to the date on which Finley filed his libel. Has the United States excused or even explained such delay? The United States having filed its impleader, its argument to the effect that it has a right at a later time to sue Todd on its indemnity promise is not an explanation or justification for the lengthy delay. The issue is not whether the United States some time in the future could sue Todd; it has sued Todd. The pleadings, affidavits, and briefs submitted on behalf of the United States

significantly are barren of one sentence explaining to the court any reason for the delay. Moreover, prima facie the delay is inexcusable in that Finley's libel containing the allegation against the United States put it on notice regarding his contention as to the cause of and responsibility for the explosion. In its answer the United States denied that allegation thereby putting in issue on July 27, 1951, the questions (a) Were the harmful substances negligently allowed to accumulate? (b) If so, who was responsible therefor? Furthermore, the 27th interrogatory propounded by Finley to the United States was: "State the date that the No. 8 tank and its adjoining cofferdams were last cleaned prior to May 19, 1947." On July 23, 1952, the answer was: "This is not known by the U. S. A. because, between April 5 and June 23, 1947, the vessel was in the possession and control of Todd Shipyards Corporation which had contracted to clean all tanks and cofferdams sufficiently for the procurement of a 'gas free' certificate."[3] Thus, despite the knowledge of the United States on April 16, 1951, that it was being sued for negligently allowing oils, gasoline, or gases to accumulate and despite its denial on July 27, 1951, of such negligence, and despite its contention on July 23, 1952, (and knowledge prior thereto) that prior to and on the date of the explosion Todd had possession and control of the vessel and had contracted to clean *all*

3. Other interrogatories and answers by the United States show that the United States was aware of Todd's conduct:

"Twenty-eighth: State the date that the No. 8 tank and its adjoining cofferdams were given gas-free tests prior to May 19, 1947."

"28. Except as indicated, this is not known by the United States of America because, between April 5 and May 19, 1947, the SS NEOSHO was in the possession and control of Todd Shipyards Corporation which had contracted to test the vessel and to furnish 'gas free' certificates before starting any hot work. However, the United States of America is informed that, on April 11, 1947, a chemist employed by Todd Shipyards Corporation made a test of No. 8 tank and the

aft cofferdams in order to ascertain whether they were or were not gas free."

"Twenty-Ninth: In submitting his certificate for this particular test, did the Certificated Chemist make any reservations with respect to removal of rust scale from the bulkheads of the No. 8 tank and its adjoining cofferdams prior to commencement of hot work?"

"29. The United States of America is not informed of the extraneous reservations, if any, which Todd's chemist made at the time he submitted to Todd his written certificate. So far as concerns the certificate itself, the United States of America is informed that it did not contain the reservation referred to in the interrogatory."

tanks and cofferdams, nevertheless, the United States delayed until May 25, 1954, before filing its petition to implead Todd.

But has Todd shown prejudice resulting from the unexplained and prima facie inexcusable delay? Todd's counsel has filed an affidavit in which he says:

"(a) Since the accident, William Donovan, chemist for TODD SHIPYARDS CORPORATION died. His testimony was important to show the various tests that were made by him or under his supervision in the cofferdam of the S.S. Neosho prior to and following the accident of THOMAS FINLEY. His testimony would further show that the coffer-dam in which the libelant was injured was free from explosive gases and was a safe place in which to work. It would definitely be established through the deceased chemist that TODD SHIPYARDS CORPORATION was free from any negligence or fault causing the flash fire in which FINLEY was injured.

"(b) Moreover, because of the lapse of time entirely without fault on the part of TODD SHIPYARDS CORPORATION all contact with many persons who were in and about the ship at the time of the occurrence of the accident and whose testimony would be important in connection with the circumstances of the accident have been lost. TODD SHIPYARDS CORPORATION, therefore, has been deprived of the benefit of their testimony."

The affidavit is unrefuted by the United States, which instead argues that Todd does not have to prove that the vessel was gas free because Todd seeks to implead its subcontractor, Guardino, in order to charge it with failing properly to gas free the vessel, so that the dead expert's testimony only would tend to exculpate Guardino, i. e., Todd's burden of proof does not include proof that Todd gas freed the vessel. The argument is unpersuasive because Todd would have the right to prove by the

testimony of its expert (now dead) that it was not negligent because the ship was gas free, even though such proof incidentally would have exculpated Guardino.

Based on the foregoing, the court finds that the prejudice asserted by Todd was the result of the United States' prima facie and unexplained delay in impleading Todd, is a sufficient showing of laches to bar the impleader action. Cf. Wilson v. Northwest Marine Iron Works, 9 Cir., 212 F.2d 510, 511; Petition of Esso Shipping Co., D.C., 121 F.Supp. 837, 842; Tesoriero v. A/S J. Ludwig Mowinckels Rederi, D.C., 113 F.Supp. 544, 546; Slepski v. Dravo Corp., 3 Cir., 104 F.Supp. 89, 91; and The Sydfold, D.C., 12 F.Supp. 276, 277.

Todd's motion to dismiss the third-party libel is granted without prejudice to the United States to file an amended petition within twenty days pleading facts excusing its delay and negativing prejudice to Todd resulting therefrom. Wilson v. Edwards Transp. Co., D.C., 120 F.Supp. 742, 744, and Tesoriero v. A/S J. Ludwig Mowinckels Rederi, supra.

In view of the foregoing opinion, it is unnecessary for the court now to rule on Todd's motion to implead its subcontractor, Guardino.

An order may be submitted in conformity with the opinion herein expressed.

Reargument of Motion to Dismiss, Set Aside and Vacate Service of a Third-Party Summons etc.

MODARELLI, District Judge.

In an opinion filed on February 18, 1955, this court granted Todd Shipyards Corporation's motion to dismiss the impleader action brought by the United States. Reargument was allowed solely on an issue not previously raised by the parties in their six briefs, viz., whether the United States is subject to the defense of laches here.

Todd incorrectly states in its brief that this court, in its original opinion, decided that issue. In the opinion, this court

noted that "No question has been raised as to whether laches can be applied against the sovereign in this case." The reason the court included that sentence was that its research had indicated that under some circumstances the United States is subject to the defense of laches. Since six briefs had been submitted by the United States and Todd, however, and the issue had not been raised, the court inferred that counsel had considered the issue but had decided that in this case the defense of laches was proper. Apparently, the court's inference was incorrect, for the request by the United States for reargument was based mainly on that issue.

■ Todd's position, as stated in its brief, is that "Laches resting only on the running of time will not suffice" but that since Todd has suffered prejudice, the defense of laches against the United States is proper. But when the courts in the cases cited below held that the defense of "laches" cannot be invoked against the United States, they obviously used the word "laches" to mean the passage of time plus prejudice resulting therefrom, for that is what is meant by the legal conclusion "laches." The mere passage of time, of course, does not constitute laches.

Todd also argues that Congress and the courts have decreased the scope of sovereign immunity from suit. While that may be so, is there any indication in any recent case or statute that would permit this court to rule that the laches of the United States bars its impleader action against Todd?

■ Todd cites the exceptions to the general rule that the United States is not subject to the defense of laches: (1) Cases holding that when the United States issues commercial paper, it becomes subject to the same defenses, including laches, as would a private party. United States v. Nashville, etc., R. Co., 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81; Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237; Ladd & Tilton Bank v. United States, 9 Cir., 43 F.2d 665; United States

v. Bank of America Nat. T. & S. Ass'n, D.C., 47 F.Supp. 279; United States v. National Rockland Bank, D.C., 35 F.Supp. 912; United States v. National City Bank of New York, D.C., 28 F.Supp. 144; United States v. First Nat. Bank & Trust Co. of Oklahoma City, D.C., 17 F.Supp. 611; (2) cases involving the ownership of land where the courts have refused to cancel a patent for a tract of public land on the ground of fraud which was known to the United States many years prior to the action. United States v. Smith, 9 Cir., 14 F.2d 391; cf. United States v. Stinson, 197 U.S. 200, 25 S.Ct. 426, 49 L.Ed. 724; (3) cases holding that when the United States is a mere nominal party in an action, laches may be applied against the real party in interest. United States v. Beebe, 127 U.S. 338, 8 S.Ct. 1083, 32 L.Ed. 121; State of Iowa v. Carr, 8 Cir., 191 F. 257; United States v. Fletcher, D.C., 231 F. 326 affirmed 8 Cir., 242 F. 818. Todd also cites cases which are not pertinent to the issue now before the court. The category (3) principle does not apply here where the United States is not a nominal party.

The rationale of the commercial paper cases is that in order to have free and confident circulation of negotiable paper, as a result of the United States' daily, widespread use of negotiable instruments, when, for example, it sues a bank for wrongfully paying on a forged indorsement, the United States must submit itself to the same defenses that would have been available against a private party. See Graham v. White-Phillips Co., Inc., 296 U.S. 27, 31, 56 S.Ct. 21, 80 L.Ed. 20; Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237. That rationale is not applicable to this case. As to the cases involving the ownership of land, they only illustrate a second limited exception to the general rule that the United States is not subject to the defense of laches.

Some of the cases in support of the United States' argument are: Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 132, 58 S.Ct. 785, 82 L.Ed. 1224; Utah Power & Light Co. v. United

States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L.Ed. 199; The Lake Galera, 2 Cir., 60 F.2d 876, certiorari denied sub nom. Jamison v. United States, 287 U.S. 670, 53 S.Ct. 314, 77 L.Ed. 578; United States v. Czarnikow-Rionda Co., 2 Cir., 40 F.2d 214, certiorari denied 282 U.S. 844, 51 S.Ct. 24, 75 L.Ed. 749; United States v. Alex Dussel Iron Works, Inc., 5 Cir., 31 F.2d 535; The Messenger, D.C., 14 F.2d 147; Read v. Williams, 1951 A.M.C. 1564.

Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 132, 58 S.Ct. 785, 788, explains the reason for the general rule that the United States is not subject to the defense of laches, which is established by the cited cases " * * * the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers."

■ In the case at bar, if the court held that the United States is subject to Todd's defense of laches (and there is no contention that, in fact, there has been no laches) then the delay by the United States' counsel in impleading Todd would deprive the United States of its rights under its indemnity contract with Todd. The result would be that if the libelant Finley recovered against the United States, then public revenue would be paid out which otherwise might have been saved. Such a revenue loss resulting from the laches of the United States' counsel would violate the policy basis for shielding the United States from laches. Thus, the court reluctantly holds that the laches is no bar to the impleader brought by the United States.

The court's idea of fairness, however, requires additional comment. As has been noted in the original opinion, the facts clearly establish laches. The prejudice suffered by Todd has been great. Nevertheless, there is no sound authority for holding that laches bars the United States' impleader action in this admiralty suit. But cf. The New Windsor, D.C., 13 F.2d 925, affirmed United States

v. Jacksonville Forwarding Co., 5 Cir., 18 F.2d 39; The No. 34, D.C., 13 F.2d 927. The court is bound by the general principle established by the cases, even though an unfair result has been reached. Perhaps an appellate court could be persuaded that there should be an additional exception to the general rule set forth in the cases. Absent such authority, however, and despite its belief that such an exception would be proper, this court cannot reach a conclusion contrary to the clear and unlimited pronouncements of the Supreme Court and the cases following that authority.

Since the laches of the United States is not a defense available to Todd, it is necessary for the court to discuss Todd's second argument based on the supposed exclusivity of the Longshoremen's and Harbor Workers' Compensation Act.

■ Crawford v. Pope & Talbot, Inc., 3 Cir., 206 F.2d 784, 792, held that the Act " * * * does not insulate the employer from all liability to a third party from whom an employee has recovered damages. See United States v. Arrow Stevedoring Co., 9 Cir., 1949, 175 F.2d 329, 332. Liability for indemnity as distinguished from contribution, may arise from the contractual relations of the employer with the third party. Claims for full indemnity arising out of such contractual relations have *not* been considered barred by the section. See Rich v. United States, 2 Cir., 1949, 177 F.2d 688. * * *" The court then concluded that the charterer of the vessel may have been entitled to indemnity from the employer of the worker, who was the libelant. The holding is precisely applicable to this case. The court concludes that the Act does not bar the United States from an opportunity to establish its claim for indemnity.

■ Todd's remaining argument, which the court did not discuss in its original opinion, is that the United States has no right to contribution or indemnification from Todd. The United States bases its claim against Todd not on a right to contribution, but on the express

indemnity contract quoted in the original opinion. It is unnecessary for the court now to construe that contract because for the purpose of this impleader action, Admiralty Rule 56, 28 U.S.C.A., requires only that Todd "may be" liable to the United States. Todd may be liable to the United States on the indemnity promise.

Todd's Motion to Implead Guardino

Since Todd's motion to dismiss is denied, its motion to implead Guardino & Sons, Inc., must be decided. Guardino was the sub-contractor whose contractual undertaking, according to Todd's affidavit, was to gas-free the ship. That subcontract containing an indemnification clause, which the court need not construe now, is a sufficient ground under Admiralty Rule 56 to grant Todd's motion to implead Guardino. Additionally, Todd alleges that Guardino may be liable either to Todd or to Finley as a result of negligently failing to gas-free the ship. Both grounds are sufficient to grant Todd's motion to implead Guardino.

An order may be submitted in conformity with the opinion herein expressed.